**INDIANAPOLIS RACEWAY PARK, INC., Defendant-Appellant,**

v.

**Roger CURTISS, Plaintiff-Appellee.**

No. 1–978A246.

Court of Appeals of Indiana,
First District.

March 15, 1979.

Rehearing Denied April 18, 1979.

Smith, Morgan & Ryan, Indianapolis, Parr, Richey, Obremskey & Morton, Lebanon, for defendant-appellant.

Herman E. Greenwood, Indianapolis, Martin & Wharry, Lebanon, for plaintiff-appellee.

ROBERTSON, Judge.

Defendant-appellant Indianapolis Raceway Park, Inc. (IRP) appeals an adverse judgment in favor of plaintiff-appellee Roger Curtiss (Curtiss).

The record reveals that IRP entered into a lease arrangement with a Mr. Heiman whereby Heiman agreed, in lieu of rent, to construct lighting for night races on the track owned by IRP, and in return Heiman was given the right to promote races for one season. The deposition of the track manager (Dakin) disclosed that IRP was hesitant to "gamble" on the capital expenditure themselves for lighting, but were willing to enter into a lease whereby the construction was required to be completed pursuant to IRP's specifications before the season began. In this manner, IRP felt secure because the "rent" would be paid before the races began, and hence no bond or other security would be necessary. Under the terms of the lease, Heiman agreed to bear all costs of construction and to save IRP harmless from any liability arising therefrom. Heiman was required to submit all invoices pertaining to his indebtedness for the construction to IRP, and within three days thereafter submit proof of payment. If Heiman were to default on his obligations, IRP could terminate the lease.

Curtiss had apparently worked with Heiman on prior occasions, and Heiman asked Curtiss if he wanted to bid on the lighting project. Curtiss made several trips to Indianapolis to survey the site and confer with a local electric utility. Curtiss met Dakin at the track on one visit, and Dakin also attended a meeting with the utility and Curtiss. Thereafter, Curtiss submitted a proposal to Heiman which he accepted. IRP never received a copy of the proposal, although they were aware of a "ball park figure" for the total construction cost.

Construction began in March of 1968 and was completed in late April or early May. Dakin was responsible for making sure the work was accomplished pursuant to specifications; however, it does not appear that he actually directed or coordinated the construction. Dakin was at the site every day and since his office was located at the main gate, he signed for various materials as they arrived. Under the contract between Curtiss and Heiman, Heiman was not required to pay until completion. Hence, IRP never received invoices for progress payments. When the work was virtually complete, Curtiss presented a bill to Heiman and Heiman wrote a bad check therefor. Curtiss then notified IRP that Heiman failed to pay, and demanded payment from IRP. IRP exercised their rights to terminate the lease and assumed the use of the track. Although Curtiss knew Heiman had to construct lighting in order to operate night races, he was unaware of the specific provisions of the lease until demand was made upon IRP. IRP refused to pay, and Curtiss never gave notice or filed a mechanic's lien.[1] Trial was had to the court upon depositions and other matters on file, the trial court made special findings of fact and conclusions of law, and rendered judgment thereon for Curtiss.

■ Special findings are intended to preserve grounds for error in this court by

---

1. The trial court found as fact that IRP did not refuse to pay until after the time requirement for giving notice had passed. Although this fact is irrelevant to the issues herein, we disap-

prove of the inference that the filing requirements may be ignored due to the silence of the owner.

disclosing the factual basis for the legal theory applied below. *In re Marriage of Miles,* (1977) Ind.App., 362 N.E.2d 171.

Thus, whether the findings are adequate depends upon whether they are sufficient to disclose a valid basis under the issues for the legal result reached in the judgment. In making this determination a reviewing court will accept the findings made by the trial court if they are supported by evidence of probative value. [Citations omitted]. Furthermore, on appeal the findings will be construed [in support] of the judgment.

Id., 362 N.E.2d at 174 (citations omitted.) Both Curtiss and IRP assert the legal theory involved is quasi contract for unjust enrichment. No agency or ratification theory is before us. Therefore, we must decide whether the findings of fact are based upon evidence of probative value and whether such facts support recovery in quasi contract.

██ In *Dyer Construction Co., Inc. v. Ellas Construction Co., Inc. et al.,* (1972) 153 Ind.App. 304, 287 N.E.2d 262, we held that:

Contracts implied in law, more properly termed constructive or quasi contracts, are not contracts in the true sense. They rest on a legal fiction imposed by law without regard to assent of the parties. They arise from reason, law, and natural equity, and are clothed with the semblance of contract for the purpose of a remedy. No action can lie in quasi contract unless one party is wrongfully enriched at the expense of another.

153 Ind.App. at 308, 287 N.E.2d at 264. "In other words, where there is a wrong, the court will find a remedy." *Clark v. Peoples Savings & Loan Association of DeKalb County,* (1943) 221 Ind. 168, 172, 46 N.E.2d 681, 682. Unjust enrichment comes within the purview of an action based on quasi contract, *Key Hotel Corporation, Club Olympia, Inc. v. Crowe, Chizek & Company,* (1977) Ind.App., 359 N.E.2d 262, and becomes an indispensible element thereof.

*Glick v. Seufert Construction and Supply Co., Inc.,* (1976) Ind.App., 342 N.E.2d 874.[2] Generally, the plaintiff must show the benefit was rendered to the party sought to be charged at his implied request under circumstance in which a court of equity invokes the remedy of restitution in order to avoid unjust enrichment. *See Kody Engineering Company, Inc. v. Fox and Fox Insurance Agency, Inc.,* (1973) 158 Ind.App. 498, 303 N.E.2d 307; *Glick, supra.* Therefore, quasi contract is designed to remedy a wrong, and relevant considerations include whether the defendant is *unjustly* enriched and whether the benefits were bestowed at his implied request. Absent a wrong, intervention by equity is inappropriate.

██ Returning to the facts at bar, Heiman was obligated by contract to construct lighting for IRP, and in order to fulfill this obligation, *Heiman* contracted with Curtiss. Although in common parlance Heiman was not a "general contractor," the arrangement was virtually indistinguishable from the typical situation wherein an owner contracts with another to perform certain construction, and the other engages a sub-contractor. In such a case the parties have voluntarily allocated the risks by contract, and the failure of the general contractor to perform does not generally give rise to an action for unjust enrichment against the owner. *See generally Robertson v. Laughlin Insulation Company, Inc.,* 134 Ga.App. 509, 215 S.E.2d 274 (1975); *Rolla Lumber Company v. Evans,* 482 S.W.2d 519 (Mo. App.1972); *Haggard Drilling, Inc. v. Greene,* 195 Neb. 136, 236 N.W.2d 841 (1975); *Home Carpet Cleaning Company, Inc. v. Baker,* 1 Mass.App. 879, 307 N.E.2d 346 (1974); *Bismark Hospital Association v. Burleigh County,* 146 N.W.2d 887 (N.D. 1966); *Hopkins v. Anderson,* 7 Wash.App. 762, 502 P.2d 473 (1972); 66 Am.Jur.2d *Restitution and Implied Contracts* § 16 (1973). Compare cases collected in Annot. 62 A.L. R.3d 288 (1975).

Some general principles to be gleaned from the above cases are helpful in analyz-

---

**2.** Reliance on *Glick* by both parties is misplaced. *Glick* stands for the proposition that a judgment *denying* relief on quasi contract will not be reversed where the owner has once paid,

*i. e.,* the enrichment in such a case is not unjust. While payment is relevant, it does not necessarily compel a result one way or the other.

ing the action on quasi contract. Some of the courts declare that the owner must have engaged in overreaching or some sort of misleading conduct before a claim for unjust enrichment may be successfully asserted by the sub-contractor. *See, e. g., Rolla Lumber Company; Haggard Drilling, Inc., supra.* Also, in order to avoid unjust enrichment, the owner need not destroy the improvement. *Rolla Lumber Company, supra,* and the fact that the general contractor is a poor credit risk is not sufficient to support quasi contract recovery in the absence of fraud or misleading conduct. *Haggard Drilling, Inc., supra.* Other courts focus on whether the sub-contractor reasonably expected the owner to pay, and that the owner permitted the work to continue by sharing the sub-contractor's expectation. *Home Carpet Cleaning Company, Inc.; Bismark Hospital Association; Hopkins, supra.* We also note that under facts strikingly similar to the case at bar, the "sub-contractor" was denied recovery against the lessor. *Commercial Fixtures and Furnishings, Inc. v. Adams,* Utah, 564 P.2d 773 (1977).

 We believe these cases are in harmony with our common law and place appropriate emphasis on whether the owner acted wrongfully or engaged in misleading conduct which resulted in *unjust enrichment.* With this in mind, we are of the opinion that the judgment cannot be sustained under the foregoing principles. First, the trial court did not find that IRP impliedly requested *Curtiss* to do the work for IRP. Rather, it is clear that the request was made by Heiman and reduced to a binding contract with Curtiss. Secondly, the facts are insufficient to support a finding that IRP reasonably expected to pay Curtiss, or that Curtiss reasonably expected to be paid by IRP. By accepting deliveries, attending a meeting with the electric company and supervising the work, IRP merely acted in their capacity as owner and pursuant to their rights under the lease. Such conduct is not tantamount to a representation of willingness to *pay,* and certainly would not constitute notice to IRP that Curtiss was laboring under the apprehension that IRP was a surety for Heiman. Thirdly, the findings do not disclose an actual wrong perpetrated by IRP. They did not know that Heiman's default until after completion, and there is no evidence that IRP induced Curtiss to execute the contract with Heiman. The Curtiss contract was an arms length transaction with the burden of Heiman's fiscal responsibility more properly resting on Curtiss and not on IRP.[3] Lastly, we believe that IRP's conduct was not so active and instrumental that IRP "stepped into the shoes" of Heiman.[4] This is but a corollary to the proposition that Curtiss reasonably expected IRP to pay which we have already discussed.

Therefore, we believe that the findings of fact are not supported by evidence of probative value for recovery on the theory of quasi contract. *See Miles, supra.*

Reversed ·and remanded.

LYBROOK, P. J., and LOWDERMILK, J., concur.

---

3. The trial court concluded that IRP had breached a duty by not warning Curtiss of the "increasing" danger that Heiman would not pay. The evidence is clear, however, that pursuant to the Curtiss contract Heiman was not billed until completion, and that IRP did not know of his failure to pay until after completion. Further, in light of Curtiss's willingness to forego payment until completion, we fail to see how IRP had a legal duty to *ask* Curtiss if Heiman was fulfilling his obligations. It was the terms of the contract, and not the actions of IRP, which lead to the untimely discovery of Heiman's insolvency. "We must leave to individual parties the right to make the terms of their agreements as they deem fit and proper . . .." *Brademas v. Real Estate Develop-*

ment Co.,* (1977) Ind.App., 370 N.E.2d 997, 1000 (citation omitted.)

4. The case of *American Islam Society, Inc. v. Bob Ulrich Decorating, Inc., et al.,* (1956) 126 Ind.App. 266, 132 N.E.2d 620, is of no avail to Curtiss because that case concerned whether a *mechanic's lien* would attach to the lessor's interest. In such a case, the lessor is considered an "owner" within the mechanic's lien statutes. *See The Dallas Company, Inc., et al. v. William Tobias Studio, et al.,* (1974) 162 Ind.App. 213, 318 N.E.2d 568. However, whether a lien will attach has no relation to whether the owner has engaged in a wrong sufficient to warrant a finding of unjust enrichment.