SAMAR, INC., Appellant–Defendant,

v.

Jack HOFFERTH, Appellee–Plaintiff.

No. 71A04–9907–CV–315

Court of Appeals of Indiana.

April 26, 2000.

Don G. Blackmond, Lynn M. Butcher, South Bend, Indiana, Attorneys for Appellant.

Brent E. Inabnit, Matthew R. Kaczmarek, Sopko Nussbaum & Inabnit, South Bend, Indiana, Attorneys for Appellee.

## OPINION

SHARPNACK, Chief Judge

Samar, Inc., appeals the trial court's judgment in favor of Jack Hofferth in a breach of contract action. Samar raises two issues, which we restate as:

1) whether the trial court erred in awarding Hofferth a commission based on its finding that Samar had not entered into an exclusive right to sell listing contract following the expiration of the Samar–Hofferth listing agreement; and

2) whether Hofferth waived his right to a commission.

We affirm and remand for a determination of Hofferth's reasonable appellate attorney fees.

The facts most favorable to the judgment follow. On April 1, 1997, Samar entered into an exclusive right to sell listing agreement with Hofferth, a real estate broker for Alpha Realty, Inc., regarding Samar's commercial real estate located at 1319 Iowa Street in South Bend, Indiana. This agreement, which was effective from April 1, 1997 to October 1, 1997, provided that Hofferth would receive an amount equal to ten percent of the purchase price as a commission if a sale of the property

was made. The agreement also contained an extension clause that provided:

"In the event of any transfer of an interest in said real estate within 180 days after the expiration of this Listing Contract and its extensions, to any person, firm or corporation who has been introduced, interested, or shown the property during the exclusive period of this listing by the Owner or by the Broker.... Owner agrees to pay Broker a commission as provided by this Listing Contract ... provided however, that this extension clause shall not be applicable and binding during the term that said real estate is relisted with some other broker under an exclusive right to sell listing contract."

Record, p. 419.

Sometime in August 1997, Hofferth showed Samar's property to Lalwani, L.L.C. On September 16, 1997, Lalwani made an offer to purchase Samar's property for $162,000. This offer was accepted by Samar. Thereafter, a dispute arose between Samar and Lalwani regarding a proposed term in the contract that called for the escrowing of real estate property taxes. When the parties could not reach an agreement on the issue, the sale fell through and Hofferth returned Lalwani's earnest money.

Subsequently, on October 1, 1997, Hofferth's exclusive right to sell the property under the listing agreement expired. Hofferth refused to relist the property because of problems that he had had with Samar. Specifically, Samar had previously requested that Hofferth accept a reduced commission on the sale of the property because the proposed selling price under the Lalwani deal was less than the listing price. Then, sometime after the listing contract expired, Samar informed Hofferth that he had been in contact with Lalwani again and suggested that Hofferth could put the deal together for a commission significantly less than the ten percent provided for in the listing agreement. Hofferth declined and reminded Samar that the extension clause in the contract ensured that Hofferth would be entitled to a ten percent commission if the property was sold to Lalwani within 180 days of the expiration of the listing agreement. Samar responded that he could defeat the extension clause by listing the property with another broker under an exclusive listing agreement.

Thereafter, on October 23, 1997, Samar entered into a listing agreement with Ron Olson, a real estate broker for Century 21 Realty Plus Commercial Company, regarding the property in question. The listing agreement was entitled: "Listing Contract (Exclusive Right to Sell and/or Lease) Commercial Industrial Real Estate." Record, p. 419. After that, but on the same day, Samar and Olson entered into a written agreement that provided: "Samar, Inc. reserves one client—Lalwani, LLC, if in the event Lalwani, LLC purchases the building at 1319 Iowa St. there will be no commission paid to Century 21 Realty Plus Commercial Company." Record, p. 419.

On October 30, 1997, Samar and Lalwani entered into a contract for the sale of the property located at 1319 Iowa St. for $162,000. Although Olson was present at the closing, he did not conduct or facilitate the closing. In fact, Olson did nothing to facilitate the sale of the property to Lalwani and he did not perform any brokerage services with respect to the property. As agreed with Samar, Olson did not receive a commission for the sale of the property in question. However, Olson did receive $1,500 from Samar as payment for his time.

Hofferth filed a complaint against Samar, alleging breach of contract stemming from Samar's failure to pay Hofferth commission due on the sale of the property located at 1319 Iowa St. Following a bench trial, the trial court entered a judgment in favor of Hofferth, awarding him $16,200 in commission plus attorney fees and prejudgment interest.

Where, as here, a party has requested specific findings of fact and conclusions of law, we apply a two-tiered standard of review. *Carnahan v. Moriah Property Owners Ass'n, Inc.*, 716 N.E.2d 437, 443 (Ind.1999). We must first determine whether the evidence supports the findings. *Id.* Then, we determine whether the findings support the judgment. *Id.* The findings are clearly erroneous when a review of the record leaves us firmly convinced that a mistake has been made. *Id.* We will disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. *Id.*

### I.

Samar first alleges that the trial court erred in awarding Hofferth a commission because Samar had relisted the property under an exclusive listing agreement with another broker. By this allegation, Samar is impliedly challenging the following conclusions of the trial court:

"9. Samar did not re-list the Property, at any time after October 1, 1997, with another broker under an exclusive right to sell contract.

\* \* \* \* \*

12. Pursuant to the terms of the Extension Clause of the Listing Agreement Hofferth is entitled to a ten percent (10%) commission (that is, $16,200) the [sic] with respect to the sale of the Property to Lalwani, LLC."

Record, p. 170.

There is no question that Lalwani had been "introduced, interested, or shown" the property located at 1319 Iowa St., as defined by the Samar–Hofferth extension clause, while the listing agreement was in effect. Record, p. 419. However, Lalwani did not buy the property until after the Samar–Hofferth listing agreement had expired. Nevertheless, pursuant to the extension clause, Hofferth would still be entitled to recover a ten percent commission on the sale of the property, because it was sold within 180 days of the expiration of the Samar–Hofferth listing agreement, *unless* Samar "relisted the property with some other broker under an exclusive right to sell listing contract." Record, p. 419. Therefore, the pivotal issue in determining whether Hofferth is entitled to a commission is whether the contract that Samar entered into with Olson was an exclusive right to sell listing contract.

Samar contends that the agreement that it entered into with Olson was an exclusive right to sell listing contract, thus voiding Hofferth's right to a commission, because the "the agreement calls itself an exclusive right to sell listing contract and includes language giving Olson the exclusive right to sell th[e] property." Appellant's Brief, p. 17. Samar further argues that the fact that the listing agreement excepted a certain buyer, namely Lalwani, does not make it a nonexclusive listing agreement. In support, Samar cites to cases wherein we have referred to a listing contract that excluded certain prospective buyers as an "exclusive listing contract." *See Bishop v. Sanders,* 624 N.E.2d 64, 65–66 (Ind.Ct. App.1993), *reh'g denied, trans. denied* (noting that the seller executed an exclusive listing contract that excluded a certain purchaser for a two week period); *Rosner v. Schacht,* 452 N.E.2d 1079, 1080 (Ind.Ct. App.1983) (noting that seller and broker entered into an exclusive listing contract that excluded certain prospective buyers that the seller had previously talked with about the sale). From this, Samar concludes that the definition of an exclusive right to sell listing agreement necessarily includes the right to except certain buyers, and that in the absence of specific language in the extension clause prohibiting such reservations, it was entitled to exempt Lalwani from the purported "exclusive" listing agreement with Olson without incurring an obligation to pay Hofferth a commission.

We cannot agree with Samar's position. A brokerage contract is subject to the same rules and cannons of construction that are applied to all contracts. When interpreting a contract, our paramount goal is to ascertain and effectuate the intent of the parties. *Peoples Bank & Trust Co. v. Price,* 714 N.E.2d 712, 717 (Ind.Ct.App.1999), *trans. denied.* This requires that the contract be read as a whole, and the language construed so as not to render any words, phrases, or terms ineffective or meaningless. *Id.* When the language of a contract is clear and unambiguous, the intent of the parties is determined from the four corners of the instrument, giving the words contained therein their plain, usual, and ordinary meaning. *Id.* at 716. In contrast, when the language in a contract is ambiguous or uncertain, its meaning is to be determined by extrinsic evidence. *Id.* A contract is ambiguous if reasonably intelligent people could find its provisions susceptible to more than one interpretation. *Bishop,* 624 N.E.2d at 67. However, the terms of a contract are not ambiguous simply because a controversy exists between the parties concerning the proper interpretation of terms. *Ostrander v. Board of Dirs. of Porter County Educ. Interlocal,* 650 N.E.2d 1192, 1196 (Ind.Ct.App.1995), *reh'g denied, trans. denied.* Additionally, in the absence of anything to indicate a contrary intention, writings executed at the same time and relating to the same transaction or subject matter will be construed together. *Id.* at 717.

Generally, the purpose of including an extension clause in a real estate listing contract is to protect the broker when he or she has expended time and effort in discovering a purchaser, but the sale of the listed property to that purchaser does not occur until after the expiration of the listing contract. *Harkey v. Gahagan,* 338 So.2d 133, 135 (La.Ct.App.1976); *Ackerman v. Dobbs,* 181 A.D.2d 704, 706, 580 N.Y.S.2d 793, 795 (N.Y.App.Div.1992) (stating that the "obvious intention of [the extension clause] was to foreclose a seller from receiving the benefit of the broker's services and then, after a buyer had been found during the period the agreement was in force, avoiding the commission through the simple device of waiting until the brokerage contract had expired"); 51 A.L.R.3d 1149 (1973). Clearly, this was also the purpose behind the extension clause in the Samar–Hofferth listing agreement. The fact that Hofferth agreed to give up the protection afforded by the extension clause in the event that Samar relisted the property under an exclusive right to sell listing contract does not change the ultimate purpose of protecting Hofferth against the loss of compensation for his time and effort expended in procuring a purchaser. Therefore, in examining whether the Samar–Olson listing agreement was exclusive, we must be mindful of this purpose in order to effectuate the intent of the parties.

We conclude that the term "exclusive right to sell listing contract," within the context of the extension clause at issue, does not include the right to except a buyer with whom the broker had nearly completed a sale. While we acknowledge that a party may, in the first instance, enter into an exclusive right to sell listing contract while simultaneously exempting certain buyers, the same is not permissible where the party is subject to an extension clause and the buyer sought to be exempted is one to whom the extension clause applies. To hold otherwise would defeat the parties' intentions and serve a manifest injustice. This is especially true under the facts of this case.

Here, Samar demanded that Hofferth accept a substantially reduced commission, and when Hofferth refused, failed to complete a sale to Lalwani because Lalwani would not agree to escrow taxes. Then, after the listing agreement expired, Samar entered into a listing agreement with Olson that had the word "exclusive" in the title, but "reserve[d] one client—Lalwani" and provided that Olson would not be paid a commission if the

property were sold to Lalwani. The sale to Lalwani, for the same price offered while Hofferth was acting as broker but absent the requirement that the taxes be escrowed, was completed less than a month after the Samar–Hofferth listing agreement expired, with Olson doing nothing to facilitate the sale and not receiving a commission. When Samar and Hofferth agreed that the extension clause would not apply if Samar entered into another exclusive right to sell listing contract, this type of result was clearly not what the parties intended. As is it our duty to construe the language of a contract so as not to render any words or phrases ineffective or meaningless, we hold that the term "exclusive right to sell listing contract," within the meaning of the extension clause at issue, did not grant Samar the authority to exempt Lalwani from its listing contract with Olson without incurring an obligation to pay Hofferth a commission on the sale of such property. *See Price,* 714 N.E.2d at 717.

## II.

Samar next contends that Hofferth waived his right to a commission on the sale of the property in question. In response, Hofferth asserts that Samar waived the affirmative defense of waiver because it did not raise such defense in its answer. Generally, an affirmative defense is waived by failure to raise it in the pleadings. Ind. Trial Rule 8(C); *Custer v. Plan Comm'n of City of Garrett,* 699 N.E.2d 793, 795 (Ind.Ct.App.1998). However, if an issue that is not raised in the pleadings is tried by the express or implied consent of the parties, the issue will be treated as if it were raised by the pleadings. Ind. Trial Rule 15(B); *Custer,* 699 N.E.2d at 795. As we have previously stated:

> "[b]efore a party may impliedly consent to the trial of an unpleaded issue, he

must be given some notice as to the existence of that issue. Notice may be overt, as where the unpleaded issue is expressly raised prior to or sometime during the trial but before the close of evidence. Notice may be implied where the evidence presented at trial is such that a reasonably competent attorney would have recognized the unpleaded issue as being litigated. However, the opposing party may not put a new issue into a trial under the cloak of evidence relevant to an already pleaded issue. Both parties must litigate the new issue, and implied consent will not be found unless the parties know or should have known that the unpleaded issue was being presented."

*Wampler v. Tusing,* 711 N.E.2d 533, 536 (Ind.Ct.App.1999) (quoting *K Mart Corp. v. Brzezinski,* 540 N.E.2d 1276, 1281 (Ind. Ct.App.1989), *reh'g denied,* 545 N.E.2d 842, *trans. denied* ).

■ In support of its position that the defense of waiver was impliedly litigated, Samar points to evidence in the record that demonstrates that Hofferth repeatedly refused to relist the property after the Samar–Hofferth listing contract expired, stating that this is evidence that Hofferth "knowingly and intentionally waived any interest he had in the sale of this property and/or any claim he had to a possible commission."[1] Appellant's Brief, p. 19. This argument misses the point: Hofferth's refusal to relist the property after the listing contract expired has no bearing on whether Hofferth waived his right to a commission under the extension clause in the event that the property was not relisted under an exclusive right to sell listing contract with another broker. The only evidence that Samar cites that could possibly support its contention that the waiver issue was impliedly litigated at trial is testimony from Lech Borysiak, the vicepresident of Samar, that Hofferth "told

---

1. Samar does not specify whether it is claiming that the waiver issue was litigated expressly or whether it was litigated impliedly.

Nevertheless, a review of the record indicates that the issue was not litigated expressly.

[Borysiak that] he's sick of the thing, he better stay away from it. He's out of the deal, he doesn't want anything to do with it and he doesn't want any commission, any reimbursement for anything, he's out, completely out." Record, p. 371. This testimony, however, was given in the context of a discussion regarding Hofferth's return of Lalwani's earnest money and Hofferth's refusal, at the end of the listing period, to relist the property. Such testimony, considered in light of the fact that it was not given within the context of a discussion regarding Hofferth's rights under the extension clause, is insufficient for this court to fairly assume that Hofferth knew or should have known that the unpleaded issue of waiver was being presented. *See Wampler*, 711 N.E.2d at 536. Further, we note that in its proposed findings and conclusions, Samar did not propose any finding or conclusion that Hofferth had waived his rights under the listing contract.

Therefore, we hold that Samar waived the defense of waiver.

 For the foregoing reasons, we affirm the judgment of the trial court. The trial court awarded attorney fees, which were provided for in the listing agreement. Appellate attorney fees are recoverable as well under the agreement. *See Yin v. Society Nat. Bank Ind.*, 665 N.E.2d 58, 65 (Ind.Ct.App.1996), *reh'g denied, trans. denied*. We therefore remand to the trial court for a determination of the reasonable appellate attorney fees to be recovered by Hofferth.

Affirmed and remanded.

RILEY, J., and KIRSCH, J. concur.