**ENCORE HOTELS OF COLUMBUS, LLC, Appellant,**

v.

**PREFERRED FIRE PROTECTION, Appellee.**

No. 03A04–0108–CV–380.

Court of Appeals of Indiana.

March 28, 2002.

659

Jay A. Ziemer, Bowers Harrison, Evansville, IN, for Appellant.

Timothy J. Vrana, Sharpnack Bigley, Columbus, IN, for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Preferred Fire Protection ("Preferred Fire") filed a cross-claim against Encore Hotels of Columbus, L.L.C. ("Encore") seeking to recover payment for materials and labor it provided in the construction of

a hotel in Columbus.[1] Following a bench trial, the trial court entered judgment in favor of Preferred Fire in the amount of $16,745 plus interest and costs. Encore appeals from that judgment and presents several issues for our review, which we consolidate and restate as: whether the trial court erred when it concluded that Encore was unjustly enriched.[2]

We affirm.

## FACTS AND PROCEDURAL HISTORY

On April 11, 1997, Encore and S.C. Bodner Construction, Inc. ("Bodner") entered into a no-lien contract[3] for the construction of a hotel. As general contractor, Bodner was responsible for hiring and paying subcontractors to perform work on the project. Bodner hired Preferred Fire to construct a fire protection system for $54,000. By December 20, 1997, Preferred Fire had billed $37,950 for the work it had done, and Bodner had paid Preferred Fire $34,155, with the rest held as retainage. On February 11, 1998, Preferred Fire billed Bodner $11,655 for its work done from December 21, 1997 through January 31, 1998, but Encore never paid Bodner for that work, and Bodner never paid Preferred Fire.

On February 4, 1998, Encore had terminated its contract with Bodner and took over as general contractor for the project. At that time, Preferred Fire had approximately two days' worth of work left, but it had to wait for another subcontractor to finish the ceilings in the hotel before it could finish the fire protection system. On February 18, 1998, Jim Huff, a representative of Encore, telephoned Tracy Hodges at Preferred Fire to request the following information: "all paperwork, proposals, AIA's (billings), what's owed[;] how much money to finish the project." Huff also inquired regarding whether Preferred Fire would be able to resume work on the project on February 20, 1998. Huff telephoned Delbert Donaldson, a representative of Preferred Fire, and told him that the work needed to be done in time for an inspection the following Monday. Donaldson told Huff that Preferred Fire needed some assurance from Encore that Encore would cover the overtime expenses required for work done over the weekend. Huff told Donaldson that he could not authorize such an agreement.

On February 19, 1998, Robert Peters, President of Preferred Fire, sent Huff a letter by facsimile, which read:

> Dear Mr. Huff,
>
> We have been informed that your firm will be taking over the completion and contractual obligation for subject job from Bodner Construction Inc. Our contract amount to date is $54,000, excluding change order or additional work beyond the bid document.
>
> We have been requested to return to the job on 2/20/98 to complete the remainder of our contract. Any overtime or additional work required in order to complete this project on time will be added to our above contract as part of our final contract payment.

1. Preferred Fire and Encore were both named defendants in an action brought by Milestone Contractors, L.P. The facts of that underlying litigation, however, are not relevant to the issues presented in this appeal.

2. Because this issue is dispositive of the appeal, we do not address Encore's contention that the trial court erred when it found that Encore failed to mitigate its damages.

3. The "no-lien" provision of the contract nullified a mechanic's lien that Preferred Fire filed against Encore.

In order for us to continue forward, we must have an affidavit signed by a legal and authorized representative of [Encore] Construction that they will be responsible for a current remaining balance due to Preferred Fire Protection in the amount of $19,845, plus any and all additional cost incurred to complete this project per your new schedule.

Once this document is received in our office, (fax copy with hard copy to follow is acceptable), we will schedule our men for the next working day.

Please feel free to contact me if there are any questions.

Encore never responded to Peters' letter, so Preferred Fire did no further work on the project and retrieved its equipment from the construction site.

Thereafter, Encore hired a new company, United Fire Protection ("United Fire"), to complete the fire protection system at a cost of $18,732.37. When Encore did not pay either Bodner or Preferred Fire the $11,655 that Preferred Fire had billed for the work completed between December 21, 1997 and January 31, 1998, Preferred Fire filed its cross-claim against Encore to recover payment. Following a bench trial, the trial court entered judgment in favor of Preferred Fire in the amount of $11,655 plus $5,090 for retainage, plus prejudgment interest and costs. This appeal ensued.

## DISCUSSION AND DECISION

■ Where, as here, a party has requested specific findings and conclusions, we apply a two-tiered standard of review. *Samar, Inc. v. Hofferth,* 726 N.E.2d 1286, 1289 (Ind.Ct.App.2000), *trans. denied.* We must first determine whether the evidence supports the findings. *Id.* Then, we determine whether the findings support the judgment. *Id.* The findings are clearly erroneous when a review of the record leaves us firmly convinced that a mistake has been made. *Id.* We will disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. *Id.*

■ Encore contends that the trial court erred when it found in favor of Preferred Fire under the theory of unjust enrichment. To prevail on a claim of unjust enrichment, a plaintiff must establish that a measurable benefit has been conferred on the defendant under circumstances in which the defendant's retention of the benefit without payment would be unjust. *Wright v. Pennamped,* 657 N.E.2d 1223, 1229 (Ind.Ct.App.1995), *trans. denied.* For example, principles of equity prohibit unjust enrichment in cases where a party accepts the unrequested benefits another provides despite having the opportunity to decline those benefits. *Id.* at 1230.

■ Where, as here, an owner contracts with a general contractor to manage a project, and the general contractor hires subcontractors, the parties have voluntarily allocated the risks by contract, and the failure of the general contractor to perform does not generally give rise to an action for unjust enrichment against the owner. *See Indianapolis Raceway Park, Inc. v. Curtiss,* 179 Ind.App. 557, 386 N.E.2d 724, 726 (1979). However, Indiana courts have used the following four criteria to determine whether an owner has been unjustly enriched under those circumstances: 1) whether the owner impliedly requested the subcontractor to do the work; 2) whether the owner reasonably expected to pay the subcontractor, or the subcontractor reasonably expected to be paid by the owner; 3) whether there was an actual wrong perpetrated by the owner; and 4) whether the owner's conduct was so active and instrumental that the owner

"stepped into the shoes" of the contractor. *Stafford v. Barnard Lumber Co., Inc.*, 531 N.E.2d 202, 204 (Ind.1988); *Indianapolis Raceway Park, Inc.*, 386 N.E.2d at 727.

Both *Stafford* and *Indianapolis Raceway Park* involved owners who paid general contractors for work done by subcontractors, but those subcontractors sued the owners under the theory of unjust enrichment after the general contractors failed to pay the subcontractors. Those are not the facts in this case, where Encore has not paid anyone for the labor and materials Preferred Fire provided between December 21, 1997 and January 31, 1998. Under these circumstances, we hold that the four criteria set out in *Stafford* and *Indianapolis Raceway Park* do not apply. Instead, we apply the general rule that Preferred Fire must establish it conferred a measurable benefit on Encore and that Encore's retention of the benefit without payment is unjust. *See Wright*, 657 N.E.2d at 1229.

■ Under the theory of quasi-contracts the court may impose liability, though the parties have not mutually assented to a contract, to prevent one party's unjust enrichment at the expense of the other. *Lafary v. Lafary*, 522 N.E.2d 916, 918 (Ind.Ct.App.1988). Thus, Encore's contention that there could be no finding of unjust enrichment absent a contract between Encore and Preferred Fire is without merit. The undisputed evidence shows that Preferred Fire completed several weeks' worth of work on the project for the benefit of Encore, and that Encore "accepted Preferred Fire as a subcontractor to perform the work," but Encore never paid either Bodner or Preferred Fire for that work. And Encore has never complained regarding the quality of Pre-

ferred Fire's work. Indeed, Encore asked Preferred Fire to complete the work after Encore took over as general contractor on the project. But Encore asked Preferred Fire to complete the work over a weekend, which would have required Preferred Fire to pay its employees overtime. When Encore offered no guarantee that it would pay Preferred Fire the additional cost for overtime or that it would pay Preferred Fire for the unpaid work it had done from December 21, 1997 through January 31, 1998, Preferred Fire left the project site. Encore has not demonstrated that Preferred Fire's refusal to complete the work under those circumstances was unreasonable.

■ Encore now complains that it had to pay United Fire an additional $18,732.37 to complete the fire protection system. Encore contends that it was not unjustly enriched in that it paid a total of $52,888.37 for the fire protection system. But Encore cites no authority to support its contention, and we deem the issue waived. *See Hollowell v. State*, 707 N.E.2d 1014, 1025 (Ind.Ct.App.1999) (observing that failure to present cogent argument constitutes waiver of issue for appellate review); Ind. Appellate Rule 46(A)(8)(a). Waiver notwithstanding, the undisputed evidence shows that "it is more difficult for a new subcontractor to finish a job than it is for the original subcontractor to finish the job." Encore had an opportunity to avoid the extra expense of bringing in a new subcontractor when Preferred Fire offered to complete the job with only the additional expense of overtime and a promise to pay for the work Preferred Fire had completed between December 21, 1997 and January 31, 1998.[4] Moreover,

---

**4.** Encore does not contend that Preferred Fire's request for overtime was unreasonable. It is interesting to note that Peters testified

that the overtime would have amounted to approximately $300 and that he had informed Huff of that amount.

Encore has not demonstrated that any of the work that Preferred Fire had already completed was defective or otherwise unacceptable.[5] As such, we conclude that Encore was unjustly enriched when it accepted the work performed by Preferred Fire from December 21, 1997 through January 31, 1998 but failed to pay either Bodner or Preferred Fire for that work. The trial court did not err when it found in favor of Preferred Fire under the theory of unjust enrichment.[6]

Affirmed.

BAKER, J., and MATTINGLY–MAY, J., concur.

---

5. Encore does not dispute the trial court's finding that "[t]here has never been any complaint by Encore about the quality or quantity of work performed by Preferred Fire." The undisputed evidence shows that $4,500 was paid to United Fire to do a set of "shop drawings" in order to obtain a permit to work on the project. There is likewise no dispute that Preferred Fire had already prepared a set of shop drawings to obtain its permit, but that United Fire had to do its own drawings to obtain a permit in its own name. The rest of United Fire's expenses consisted of materials and labor, but the record is devoid of any evidence regarding why it cost so much to complete the work that Preferred Fire could have completed in two days for approximately $1,200.

6. Encore also contends that the trial court erred when it took judicial notice of the fact that the subject hotel had been operating for at least one year. We cannot agree. As Preferred Fire correctly notes, Evidence Rule 201 provides that a court may, sua sponte, take judicial notice of any fact "not subject to reasonable dispute in that it is ... capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Encore has not demonstrated that the challenged fact does not fall under that provision.

Encore maintains in the alternative that there is no evidence in the record "as to conditions precedent to the award of retainage." Encore cites a provision in the contract between Bodner and Preferred Fire providing that the retainage "will be released 145 days after the issuance of a certificate of occupancy or final building inspection." Clearly, the trial court made an inference that more than 145 days had passed since the final building inspection based on the fact that the hotel had been operating for at least one year. Encore does not present any evidence to demonstrate that such an inference was unreasonable. We conclude the trial court did not err when it awarded the retainage to Preferred Fire.