**KNOWLES & ASSOCIATES LLC, Appellant–Plaintiff,**

v.

**Norman E. COOK and Linda G. Cook, Appellees–Defendants.**

**No. 29A05–0209–CV–459.**

Court of Appeals of Indiana.

March 18, 2003.

---

William W. Knowles, Millicent E. Hatch, Nicholas T. Buschmann, Knowles & Associates LLC, Carmel, IN, Attorneys for Appellant.

## OPINION

BAKER, Judge.

Appellant-plaintiff Knowles & Associates LLC (Knowles) appeals the denial of its motion for summary judgment and the entry of summary judgment for appellees-defendants Norman E. Cook and Linda G. Cook. Specifically, Knowles alleges that inasmuch as Norman and Linda paid a portion of their son and daughter-in-law's legal fees, a constructive contract arose that requires Norman and Linda to pay the remaining legal fees. Concluding that Norman and Linda had no obligation to pay Knowles, we affirm.

## FACTS

The facts most favorable to Knowles reveal that in April 2001, David and Malissa Cook contacted Knowles and requested legal representation because they had each been served with a grand jury subpoena and target notice concerning their involvement in violations of federal mail-fraud and money-laundering laws. David and Malissa each signed engagement agreements with Knowles and paid Knowles a $7,000.00 retainer fee. After the initial

retainer, David and Malissa paid Knowles only $200.00.

Beginning in June 2001, Norman and Linda paid Knowles by sending Knowles checks from their home in Mooresville, North Carolina. Each check had on the memo line the inscription "Loan to David" or "Loan to Malissa." Appellant's App. p. 42–43. Norman and Linda's payments on David and Malissa's accounts totaled more than $16,800.00, the last payment being made in July 2001. Knowles received no further payments for David and Malissa's representation, though it did continue to assess late fees on their accounts. During the course of Knowles's representation, Knowles had no direct contact with either Norman or Linda. Norman attended three hearings during the federal government's proceedings against David but did not discuss the case with Knowles.

In all, Knowles's legal fees amounted to nearly $43,000 for its representation of David and Malissa. The proceedings against David and Malissa concluded with David pleading guilty to one count of mail fraud with a suspended sentence. No charges were filed against Malissa.

On March 6, 2002, Knowles filed its complaint against Norman and Linda for relief under a quasi-contract theory wherein Knowles asked for $26,087.97 in damages.[1] The complaint alleged that Knowles "conferred a benefit" on Norman and Linda by defending their son and daughter-in-law. Appellant's App. p. 40. In their answer, Norman and Linda stated that the checks were sent directly to Knowles "at the request of my son or daughter-in-law." Appellant's App. p. 55. Norman and Linda

noted that because David and Malissa's bank accounts had been frozen as a consequence of the criminal charges against them, sending checks directly to Knowles "avoided possible frozen funds." Appellant's App. p. 55.

Knowles filed for summary judgment and designated as its evidence its complaint and Norman and Linda's answer. Their motion asserted that they were entitled to judgment as a matter of law because Norman and Linda impliedly promised—through their payments on David and Malissa's accounts—to pay Knowles for legal representation. Norman and Linda did not file a brief in opposition to Knowles's motion and failed to designate evidence. A hearing on Knowles's motion for summary judgment was held on September 10, 2002, at which time both parties appeared pro se. Knowles argued that "the fees continued to come in, therefore, the Plaintiff continued to render the services with the understanding, subjective expectation that they were now being paid for the services by the Defendants Norman and Linda." Tr. p. 13.

Norman and Linda—who have no legal training but still managed to conduct themselves rather ably during the hearing—essentially argued that a quasi-contract remedy did not apply because a promise to pay for legal services could not be implied from the circumstances of this case. They cited case law and scholarly authority for the principle that an agreement could not be implied in this case because they "had no contact at all with Knowles or any of his associates at any time." Tr. p. 20.

---

1. We question whether Knowles would have filed this suit had the defendants lived in Mooresville, Indiana, instead of Mooresville, North Carolina. Perhaps Knowles simply believed that Norman and Linda would capitulate because of the distance involved. It is apparent that Knowles sorely underestimated the spirit of these Tarheels. Not only did they travel the 600 miles to Indiana but managed to prevail at the summary judgment hearing, pro se. We applaud their sense of right and their tenacity.

On September 13, 2002, the trial court denied Knowles's motion for summary judgment and entered summary judgment for Norman and Linda. The trial court found that "Knowles has not established by the evidence that Defendants' actions created an implied request for Knowles'[s] services. Further, Knowles has not established by the evidence that Defendants were benefited by Knowles'[s] legal representation of David and Malissa." Appellant's App. p. 6. Knowles now appeals.

### DISCUSSION AND DECISION

■ We initially observe that Norman and Linda did not file an appellees' brief. "When an appellee does not submit a brief, an appellant may prevail by making a prima facie case of error." *Village of College Corner v. Town of West College Corner,* 766 N.E.2d 742, 745 (Ind.Ct.App.2002). Prima facie error is defined as " 'at first sight, on first appearance, or on the face of it.' " *Id.* (quoting *Ky. Truck Sales, Inc. v. Review Bd. of Ind. Dep't of Workforce Dev.,* 725 N.E.2d 523, 526 (Ind.Ct.App. 2000)). However, even though we apply a less stringent standard of review in these circumstances, Knowles must still demonstrate that error occurred. *In re C.E.B.,* 751 N.E.2d 329, 330 (Ind.Ct.App.2001).

When this court reviews a trial court's ruling on summary judgment, it applies the same standards used by the trial court in deciding whether to affirm or reverse summary judgment. *Creel v. I.C.E. & Assocs., Inc.,* 771 N.E.2d 1276, 1279 (Ind.Ct. App.2002). We will not weigh evidence but construe the facts in the light most favorable to the nonmoving party. *Id.* Summary judgment should be granted only if the designated evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). On appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id.* The party appealing the grant of summary judgment has the burden of persuading this court on appeal that the trial court's ruling was improper. *Jordan v. Deery,* 609 N.E.2d 1104, 1107 (Ind.1993).

■ We note that quasi-contract is a remedy that arises "from reason, law, and natural equity, and [is] clothed with the semblance of contract." *Indianapolis Raceway Park, Inc. v. Curtiss,* 179 Ind. App. 557, 559–60, 386 N.E.2d 724, 726 (1979). The quasi-contract remedy will lie when "one party is wrongfully enriched at the expense of another." *Id.* at 560, 386 N.E.2d at 726. Thus, "the plaintiff must show the benefit was rendered to the party sought to be charged *at his implied request* under circumstance[s] in which a court of equity invokes the remedy of restitution in order to avoid unjust enrichment." *Id.* (emphasis added).

In *Curtiss,* Heiman agreed with Indianapolis Raceway Park (IRP) to install lighting for night races at IRP's racetrack in exchange for Heiman receiving the right to promote races for one season. One provision of the agreement allowed IRP to end the contract if Heiman defaulted on any payments to his subcontractors. Curtiss, Heiman's subcontractor, installed the lighting but was not paid by Heiman. Curtiss then demanded payment from IRP. When IRP refused, Curtiss sued on a quasi-contract theory. The trial court found for Curtiss but we reversed, holding that the evidence could not support a theory of quasi-contract. *Id.* at 562, 386 N.E.2d at 727.

We noted several facts that indicated that no promise from IRP to Curtiss could have been implied. First, we noted that "the request was made by Heiman and reduced to a binding contract with

Curtiss." *Id.* at 561, 386 N.E.2d at 727. Second, though IRP "accept[ed] deliveries, attend[ed] a meeting with the electric company and supervis[ed] the work, IRP merely acted in their capacity as owner and pursuant to their rights under the lease. Such conduct is not tantamount to a representation of willingness to pay, and certainly would not constitute notice to IRP that Curtiss was laboring under the apprehension that IRP was a surety for Heiman." *Id.* at 561–62, 386 N.E.2d at 727. Thus, although IRP was supervising activities on its property, its actions could not be viewed as an implied request for Curtiss's actions. Finally, we noted that no evidence showed a wrong perpetrated by IRP: "There is no evidence that IRP induced Curtiss to execute the contract with Heiman." *Id.* at 562, 386 N.E.2d at 727.

Here, David and Malissa made an express contract with Knowles, much like Heiman did with Curtiss. We also note that, though Norman and Linda sent checks to Knowles, they never had contact with Knowles and only attended three hearings in their son's case. Norman and Linda had even less contact with Knowles than did IRP with Curtiss, as IRP actually "accept[ed] deliveries, attend[ed] a meeting with the electric company and supervis[ed] the work." *Id.* at 561, 386 N.E.2d at 727. Thus, Norman and Linda did not indicate a "willingness to pay" all of David and Malissa's legal fees. *Id.* at 562, 386 N.E.2d at 727.

The payments made on David and Malissa's behalf were *loans* to David and Malissa. The checks themselves stated as much. Appellant's App. p. 42–43. Additionally, the funds were paid directly to Knowles because of concerns that the FBI had frozen David and Malissa's bank accounts. Appellant's App. p. 53. Again, Norman and Linda sent checks to pay for family members' legal representation. Such acts are even less significant than the fairly active role taken on by IRP. *Id.*

Finally, we note that Norman and Linda did nothing to induce Knowles to continue representing David and Malissa. By Knowles's own admission, Norman and Linda did not ask for Knowles to continue to represent David and Malissa. Appellant's App. p. 21. The only direct communication Knowles ever had with Norman and Linda was the mailing of a complaint and summons. Tr. p. 21. Such facts cannot support the proposition that Norman and Linda made an "implied request" for Knowles to continue its legal representation. *Id.* at 560, 386 N.E.2d at 726.

In sum, the facts presented do not support recovery under a quasi-contract theory, and Knowles's arguments in attempting to recover legal fees from Norman and Linda amount to overreaching. The trial court did not err in denying Knowles's motion for summary judgment and entering summary judgment for Norman and Linda.

Affirmed.

RILEY and MATHIAS, JJ., concur.