Mark R. SAVOREE and Karen S. Savoree, Appellants–Defendants,

v.

INDUSTRIAL CONTRACTING & ERECTING, INC., Appellee–Plaintiff.

No. 84A01–0212–CV–487.

Court of Appeals of Indiana.

June 13, 2003.

Absent a wrong, intervention by equity is inappropriate.

---

Thomas A. Pastore, Troy M. Miller, Pastore & Gooden, P.C., Indianapolis, IN, Attorneys for Appellants.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellants–Defendants, Mark and Karen Savoree (collectively "the Savorees"), appeal the trial court's award in favor of Appellee–Plaintiff, Industrial Contracting & Erecting, Inc., ("Industrial") on Industrial's quasi contract claim for unjust enrichment.

We reverse.

### ISSUE

The Savorees raise one issue on appeal, which we restate as follows: whether the trial court erred in determining that Industrial, as a subcontractor, may recover directly from the Savorees, as the project owners, regarding a quasi contract claim for unjust enrichment.

### FACTS AND PROCEDURAL HISTORY

On September 27, 2002, the instant case was presented to the Vigo County Superior Court in the form of a Joint Stipulation of Facts and Trial Briefs submitted by each party. The Joint Stipulation of Facts included the following:

[Industrial] and [the Savorees], by their respective counsel have agreed on and submit their Joint Stipulation of Facts (the "Stipulation") for the resolution of this cause. Defendant, Construction Concepts of Indiana, Inc. ("CCI"), fails to appear for trial. Industrial and the Savorees stipulate to the following facts:

1. [The Savorees], husband and wife, are owners of the following described real estate located in Vigo County, State of Indiana: [legal description of real estate omitted].

2. On or about June 15, 1998, the Savorees, as owners, and CCI entered into a Standard Form of Agreement between Owner and Contractor AIA Document A101–1997 (the "Contract") and a No Lien Contract for alterations and improvements on the above-described real estate for an automotive dealership (the "Project"). Industrial never reviewed the Contract prior to this litigation. A true and accurate copy of the Contract was submitted to the Court with the Savorees' Motion to Dismiss or Stay Action and to Compel Arbitration filed with the Court August 25, 1999.

3. Pursuant to the Contract, the contract sum to be paid by the Savorees to

CCI for the alterations and improvements was One Million Two Hundred Seven Thousand Eight Hundred Eleven Dollars ($1,207,811.00) (Article 4.4.1). This sum was subsequently reduced by agreement and through change orders to $1,152,000.00.

4. On or about August 4, 1998, CCI, as general contractor, submitted a Purchase Order to Industrial for metal panels and steel building modifications for the sum of Eight Thousand Nine Hundred Twenty–Five Dollars ($8,925.00) (the "Work"). Attached hereto as Plaintiff's Exhibit "A," is a true and accurate copy of said Purchase Order.

5. In or about August and September, 1998, CCI ordered additional Work to be completed by Industrial on the Project, which Work included cutting of door frame openings, installation of guard pipe, punch plates, door trim and angle plates, cutting and delivering of materials.

6. Industrial performed the ordered Work, which Work was accepted by the Contractor. Its Work has not formally been accepted by the Savorees although the Savorees do not dispute that the Work was performed.

7. On September 10, 1998, CCI abandoned its work on the Project and indicated to the Savorees it refused to continue its work on the Project unless the Savorees agreed to certain conditions and modifications to the Contract. A copy of CCI's notice to the Savorees is attached hereto as Defendant's Exhibit "1."

8. At the time CCI abandoned the Project, CCI had submitted two pay applications to the Savorees, both of which had been paid in full by the Savorees.

9. On September 15, 1998, five (5) days after it abandoned the Project, CCI submitted a third payment application to the Savorees. This payment application included the Work performed by Industrial in August and September, 1998. Pursuant to the terms of the Contract, the Savorees refused to make payment on this payment application because of CCI's abandonment.

10. Thereafter, after negotiations failed, on October 9, 1998, the Savorees exercised their contractual right to terminate the Contract with CCI due to CCI's refusal to commence and continue work. This issue was the subject of an arbitration proceeding between CCI and the Savorees which resulted in the decision that the termination by the Savorees was proper and was exercised within their contractual rights. A copy of the arbitration award is attached hereto as Defendant's Exhibit "2."

11. Industrial submitted invoices to CCI on September 11, 1998, in the sum of Thirteen Thousand Three Hundred Ninety Dollars ($13,390.00), September 16, 1998, in the sum of Three Thousand One Hundred Sixty–Five Dollars and Forty–Four Cents ($3,165.44) and September 24, 1998, in the sum of One Thousand Four Hundred Twenty–Nine Dollars and Five Cents ($1,429.05) which represented all work performed by Industrial on the real estate owned by the Savorees. Attached hereto and marked as Plaintiff's Exhibits "B," "C," and "D" are true and accurate copies of said invoices.

12. CCI never made payment to Industrial on the submitted invoices.

13. On October 29, 1998, Industrial recorded a mechanic's lien against the Savorees property, which lien has since been released due to the existence of a statutory no-lien contract entered into between CCI and the Savorees.

14. The Savorees have not made payment to Industrial despite Industrial's demand for payment from the Savorees.

15. On December 2, 1998, Industrial served a notice to the Savorees pursuant to I.C. § 32–8–3–9 indicating to the Savorees that Industrial intended to hold the Savorees personally liable for any amount then due or which thereafter became due and owing to CCI from the Savorees. Due to the arbitration award, no amount was due or thereafter became due and owing CCI from the Savorees; and this claim is, therefore, moot and is withdrawn from consideration. The only remaining claim by Industrial against the Savorees is based upon the equitable theories of quantum meruit and unjust enrichment.

16. The Savorees have no specific knowledge concerning the scope of Work completed by Industrial on this Project but have expressed no complaints about the quality of Industrial's Work.

17. Other than correspondence between their respective counsel, the Savorees have not been in contact with nor have they had any communication whatsoever with Industrial either while Industrial performed the Work on the Project or after CCI abandoned the Project. The Savorees have never made any representation to Industrial that the Savorees would make payment to Industrial for the work performed by Industrial on this Project.

18. Had CCI completed work on the Project, the Savorees had committed to pay CCI the sum of One Million One Hundred Fifty–Two Thousand Dollars ($1,152,000.00) after taking into account agreed upon and approved change orders. The Savorees completed the Project without CCI due to CCI's breach, abandonment and termination. To complete the Project, the Savorees paid a total of One Million Four Hundred Fifty–Seven Thousand Eight Hundred Forty–One Dollars and Forty–Two Cents ($1,457,841.42) for the Project which exceeded the contract price with CCI by Three Hundred Five Thousand Eight Hundred Forty–One Dollars and Forty–Two Cents ($305,841.42) to perform the same scope of work as CCI was responsible to perform.

19. The Savorees did not hire anyone to complete Industrial's scope of Work at the Project after terminating CCI from the Project. Upon the Savorees' information and belief, Industrial's Work at the Project was complete at the time of CCI's abandonment and termination.

(Appellant's Br. pp. 105–10).

On October 2, 2002, the trial court issued an Order finding in favor of Industrial and against the Savorees in the amount of $17,984.49 plus $100.00 in court costs. In its Order, the trial court stated, in pertinent part, as follows:

> The issue is whether Industrial may recover against Savorees on a claim of quantum [meruit] or unjust enrichment on a quasi contract.
>
> The benefit received is measurable. CCI approved the work and the claims of Industrial filed for Industrial's project work. The amount totals Seventeen Thousand Nine Hundred Eighty–Four Dollars and 49/100 ($17,984.49). The sum was not paid by either CCI or [the] Savorees. [The] Savorees found no fault with Industrial's work.
>
> The completion of the modification to the building by another general contractor did not involve additional costs due to work done by Industrial.
>
> The Court concludes that the law of this case [is] found in [*Encore Hotels of Co-*

*lumbus, LLC v. Preferred Fire Protection,* 765 N.E.2d 658 (Ind.Ct.App.2002)].
(Appellant's App. p. 159.)

Subsequently, on or about November 1, 2002, the Savorees filed a Motion to Correct Error, which was granted by the trial court in a general Order issued November 8, 2002. On November 14, 2002, Industrial filed its Motion to Vacate Order Granting Motion to Correct Error, in which Industrial complained that the trial court granted the Savorees' Motion to Correct Error before Industrial was able to respond to the Savorees' Motion. Industrial properly argued that Trial Rule 59(E) provided fifteen days for an opposing party to respond to a Motion to Correct Error, plus three days for service by mail. Therefore, pursuant to T.R. 59(E), Industrial had until November 18, 2002, in which to file its response.

On November 15, 2002, the trial court issued a general Order granting Industrial's Motion to Vacate Order Granting Motion to Correct Error and vacating its November 8, 2002 Order. Thereafter, on November 18, 2002, Industrial filed its Statement in Opposition to Defendants' Motion to Correct Error. On November 19, 2002, the trial court entered the following Order:

> The Court, now being fully advised, does DENY the [Savorees'] Motion to Correct Error. The Court concludes that the work completed by [Industrial] was not paid for by [the] Savorees, but was received by [the] Savorees. While the additional costs of completing construction appears to be unfair, such outcome was not caused by [Industrial].
>
> The Summary Judgment [sic] entered for [Industrial] is affirmed.

(Appellant's App. p. 176).

The Savorees now appeal. Additional facts will be supplied as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

At the outset, we note that Industrial did not file an Appellee's Brief. When an Appellee does not submit a brief, an appellant may prevail by making a prima facie case of error. *Village of College Corner v. Town of West College Corner,* 766 N.E.2d 742, 745 (Ind.Ct.App.2002). In this context, "prima facie" is defined as "at first sight, on first appearance, or on the face of it." *Id.* By using this prima facie error standard, this court is relieved of the burden of developing arguments for the Appellee—a duty that properly remains with the Appellee. *Id.*

The trial court based its decision on the Joint Stipulation of Facts filed by the parties on September 27, 2002. When a trial court's decision is based entirely upon documentary evidence or stipulated facts, this court is in as good a position as the trial court to determine its force and effect. *Williamson v. Rutana,* 736 N.E.2d 1247, 1249 (Ind.Ct.App.2000). Consequently, the trial court's decision is afforded no deference on appeal, inasmuch as this court's review of the trial court's decision is de novo. *Grain Dealers Mut. Ins. Co. v. Wuethrich,* 716 N.E.2d 596, 598 (Ind.Ct.App.1999).

### II. *Quasi Contract and Unjust Enrichment*

The Savorees contend that the trial court erred when it found in favor of Industrial under the theory of recovery in quasi contract for unjust enrichment. Quasi contracts, also known as contracts implied in law, are not contracts in the true sense. *Indianapolis Raceway Park, Inc., v. Curtiss,* 179 Ind.App. 557, 559, 386 N.E.2d 724, 726 (1979).

They rest on a legal fiction imposed by law without regard to assent of the parties. They arise from reason, law, and natural equity, and are clothed with the semblance of contract for the purpose of a remedy. No action can lie in quasi contract unless one party is wrongfully enriched at the expense of another.

*Id.* Specifically, the Savorees assert that the trial court misinterpreted and misapplied the law of unjust enrichment on a quasi contract as stated in *Encore Hotels of Columbus, LLC v. Preferred Fire Protection*, 765 N.E.2d 658 (Ind.Ct.App.2002) (*Encore*).

*Encore* involved a no-lien contract entered into between Encore, as the owner, and Bodner, as the general contractor, for the construction of a hotel. Pursuant to the contract, Bodner was responsible for hiring and paying subcontractors to work on the project. Accordingly, Bodner hired Preferred Fire Protection (Preferred) to construct a fire protection system. As construction progressed, Bodner made payments to Preferred. At some point, Encore terminated its contract with Bodner and took over as general contractor.

As general contractor, Encore requested Preferred to resume an expedited work schedule on the project. When Preferred requested assurances from Encore that Preferred would be paid overtime for the extra hours necessary to complete the project quickly, Encore could offer none. As a result, Preferred discontinued work on the project. Encore hired a new company to complete Preferred's job. Prior to Bodner's termination, Preferred submitted an invoice to Bodner for nearly $12,000.00 of work Preferred had completed. Encore never paid Bodner for the work and Bodner never paid Preferred for the work that Preferred already completed. Preferred subsequently sued Encore to recover payment. The trial court found in Preferred's favor.

Generally, there are four criteria used to evaluate whether the evidence supports a judgment under the theory of unjust enrichment in a dispute between a subcontractor and a property owner. The following criteria were originally set forth in *Indianapolis Raceway Park*, 179 Ind. App. 557, 386 N.E.2d 724 (Ind.Ct.App. 1979), and have subsequently become the standard analysis for this issue:

1. Whether the owner impliedly requested the subcontractor to do the work;

2. Whether the owner reasonably expected to pay the subcontractor, or the subcontractor reasonably expected to be paid by the owner;

3. Whether there was an actual wrong perpetrated by the owner; and

4. Whether the owner's conduct was so active and instrumental that the owner "stepped into the shoes" of the general contractor.

*See McCorry v. G. Cowser Const., Inc.*, 636 N.E.2d 1273, 1276 (Ind.Ct.App.1994) *adopted on trans. by McCorry v. G. Cowser Const., Inc.*, 644 N.E.2d 550 (Ind.1994).

Nevertheless, on appeal, the *Encore* court held that the four criteria set forth in *Indianapolis Raceway Park* were not applicable to the facts in *Encore*. The *Encore* court reasoned that, in *Indianapolis Raceway Park* and a subsequent case, *Stafford v. Barnard Lumber Co., Inc.*, 531 N.E.2d 202 (Ind.1988), the owners paid the general contractors, but the general contractors failed to pay the subcontractors, who subsequently sued the owners under the theory of unjust enrichment. Those were not the facts in *Encore*, where Encore, as the owner, did not ever pay anyone for the labor and materials provided by Preferred, as the subcontractor. Consequently, the *Encore* court applied the more general rule requiring the subcontractor to establish only that it conferred a measurable benefit on the owner and that

the owner's retention of the benefit without payment was unjust. *See Encore*, 765 N.E.2d at 662.

Here, the parties stipulated to the fact that the Savorees paid their general contractor, CCI, in full, per the terms of the Contract, for two payment applications submitted prior to CCI's abandonment. The third payment application was submitted to the Savorees subsequent to CCI's abandoning the project. The third payment application included requests for payment for the initial work completed by Industrial. The Savorees refused to pay the third payment to CCI, as was their right under the terms of the Contract, due to CCI's refusal to commence and continue work. The Savorees' refusal to pay the third payment application was affirmed in a subsequent arbitration proceeding between the Savorees and CCI. Based on these stipulated facts, we find that the instant case is distinguishable from the facts in *Encore*. For this reason, we hold that the appropriate analysis of the issue at hand requires the application of the more specific four-prong test set forth in *Indianapolis Raceway Park*, 179 Ind.App. at 561–2, 386 N.E.2d at 727.

▮ First, in the instant case, the stipulated facts do not support a conclusion that the Savorees impliedly requested Industrial to do the subject work. To the contrary, the stipulated facts show that CCI submitted purchase orders directly to Industrial, originally on August 4, 1998. Thereafter, in August of 1998 and perhaps into September of 1998, CCI ordered additional work to be completed by Industrial. Industrial performed the ordered work and it was accepted by CCI. The stipulated facts also show that the Savorees had no contact with Industrial and "have no specific knowledge concerning the scope of work completed by Industrial" on the project. (Appellant's App. p. 108). Consequently, we find that the Savorees did not impliedly request Industrial to do the subject work. *Id.*

Second, the stipulated facts expressly provide that "[t]he Savorees have never made any representation to Industrial that the Savorees would make payment to Industrial for the work performed by Industrial" on the project. (Appellant's App. p. 109). This stipulation, in combination with the complete lack of contact between the Savorees and Industrial, demonstrates that the Savorees never reasonably expected to pay Industrial, nor could Industrial have reasonably expected to be paid directly by the Savorees. *See Indianapolis Raceway Park*, 179 Ind.App. at 562, 386 N.E.2d at 727.

Third, the parties' Joint Stipulation of Facts and Trial Briefs do not disclose any actual wrong perpetrated by the Savorees. Industrial completed its work on the project prior to billing CCI. In turn, CCI abandoned the project prior to billing the Savorees for the first part of the work performed by Industrial. Unlike the facts in *Encore*, the Savorees never contacted Industrial directly to order additional services and then refuse to pay for the services rendered. As stated above, the Savorees had no contact with Industrial and were not even aware of the scope of work completed by Industrial prior to CCI's abandonment. Consequently, we find that the Savorees did not perpetrate an actual wrong against Industrial nor did they engage in misleading conduct that resulted in unjust enrichment.[1]

Last, the Savorees' conduct subsequent to CCI's abandonment does not demonstrate that the Savorees "stepped into the shoes" of CCI. *See Indianapolis Raceway Park*, 179 Ind.App. at 562, 386 N.E.2d at 727. There was no communication be-

---

1. We note that the four criteria in *Indianapolis Raceway Park* were intended to focus the

tween the Savorees and Industrial. In fact, the record reveals that Industrial completed their work prior to CCI's abandonment of the project; as a result, the Savorees were unaware of the scope of Industrial's work, which is perhaps the reason they did not approve or disapprove of it. Also, the Savorees never hired anyone to complete Industrial's work after terminating CCI from the project. Thus, the Savorees did not step into the shoes of CCI. *See id.*

We emerge from our analysis of the stipulated facts in this case in relation to the four criteria of *Indianapolis Raceway Park* unconvinced that such facts support recovery in quasi contract. The pivotal concept of "unjust enrichment" is the occurrence of a wrong or something unjust. *See Indianapolis Raceway Park,* 179 Ind.App. at 559–61, 386 N.E.2d at 726–27. As harsh as the result may be, there is simply no evidence that the Savorees were wrongfully enriched—with emphasis on "wrongfully"—at the expense of Industrial. "Absent a wrong, intervention by equity is inappropriate." *Id.* at 726.

### CONCLUSION

Based on the foregoing, we find that Industrial, as a subcontractor, may not recover directly from the Savorees, as the project owners, under the theory of quasi contract for unjust enrichment. Accordingly, the trial court's judgment is reversed.

Reversed.

SHARPNACK, J., and BARNES, J., concur.

reviewing court's attention on "whether the owner acted wrongfully or engaged in misleading conduct which resulted in unjust enrichment." *Indianapolis Raceway Park,* 179 Ind.App. at 561, 386 N.E.2d at 727.