Alwilda **WALTER, and Fort Wayne National Bank, Guardian of the Estate of Alwilda Walter, Appellants–Defendants,**

v.

**Mark S. BALOGH, Diana L. Balogh, Barry Hoeppner & Janet Hoeppner, Appellees–Plaintiffs,**

and

**Howard Hoeppner and B & H Producers, Inc., Appellees–Third Party Defendants.**

No. 57S05–9308–CV–922.

Supreme Court of Indiana.

Aug. 24, 1993.

Eric E. Snouffer, Snouffer & Snouffer, Charles W. McNagny, Fort Wayne, for appellants-defendants.

Edward L. Murphy, Jr., Miller Carson Boxberger & Murphy, Fort Wayne, Edward J. Liptak, Miller Carson Boxberger & Murphy, Bloomington, John M. Haecker, Grimm & Grimm, P.C., Auburn, for appellees-plaintiffs.

## ON CIVIL PETITION TO TRANSFER

GIVAN, Justice.

In an opinion reported at 604 N.E.2d 1226, the Court of Appeals reversed the trial court's judgment in favor of appellees. In so doing, they remanded the case to the trial court with instructions to make specific findings of fact sufficient to preserve the right of review regarding whether Howard Hoeppner provided sufficient proof that he had not wielded undue influence over Alwilda. The Court of Appeals also instructed the trial court to proceed with foreclosure of mortgages against the appellees. We set aside the decision of the Court of Appeals and affirm the trial court.

Howard Hoeppner had been a close friend of the Walters for many years and had performed many services and favors for them. Martin Walter died in 1983. At that time, his wife Alwilda was 79 years of age. After Martin's death, Alwilda executed a Durable Power of Attorney, naming Howard Hoeppner as her attorney-in-fact. She also named him as personal representative under her will executed in 1983. Howard Hoeppner's son Barry became a tenant farmer of the Walters in 1974. Over time, Barry and his business partner, Mark Balogh, became responsible for farming approximately 600 acres of the Walters' land. They also became close friends of the Walters and did many favors for them. After Martin Walter died, both Barry and Mark did considerable favors for Alwilda.

The Walters also had other tenants, Bruce and Minnie Provine, who since 1957 had operated another tract of land of 285 acres owned by the Walters. In 1984, Alwilda Walter decided to make gifts to both the Provines and Barry and Mark. She stated her desire to give each of them the farms which they had been tending. For the purpose of drafting the necessary papers, she contacted attorney Jeanne Miller of New Haven, Indiana. Mrs. Miller advised Alwilda that if she reported the gift as being made *instanter* she would incur a sizeable gift tax liability. To lessen that liability, Mrs. Miller set up contracts whereby the possession of the farms would be delivered and the responsibility of operation would be solely in the hands of the donees. For tax purposes, they set up a payment schedule to be made over a period of years and each time a payment became due Alwilda would forgive the due payment as a gift, thus taking advantage of annual gift tax allowances.

After this had been accomplished, Mrs. Miller discovered that the farm given to the plaintiffs in this case (the Provines are not a part of this litigation) was valued at only approximately half of its true value. She stated her concern to Alwilda Walter that the agreement should be redrafted so as to show the true value of the property. In 1985, a new agreement was drawn to reflect the true value. As part of that agreement, Alwilda made a codicil to her will excusing any indebtedness from plaintiffs to her which might have remained unpaid at that time.

In June of 1988, Alwilda, who then was 84 years of age, started to become confused and forgetful. Her niece, Ellen Bates, became involved in Alwilda's financial affairs. Alwilda appointed Bates as her attorney-in-fact and revoked Howard Hoeppner's 1983 power of attorney (a power of attorney issued to Hoeppner in 1986 remained in effect). Alwilda also executed another codicil to her will which in part revoked the provision forgiving the debts of the appellees. In August of 1988, a

guardianship was established over the estate of Alwilda and the Fort Wayne National Bank was appointed as her guardian. On August 23, 1988, the appellees filed a request for special notice of hearing in Alwilda's guardianship proceeding. They allege they were entitled to special notice as mortgagors. Howard Hoeppner filed a petition in the guardianship proceeding requesting the court to adjudicate Alwilda's competence.

As Alwilda's guardian, the bank issued a notice of default to the appellees with respect to their obligations under the 1985 mortgages. The appellees filed the present action for declaratory judgment requesting the trial court to enter a judgment to the effect that the 1985 notes and mortgages were null and void and that the 1984 land contract was binding and enforceable. Alwilda and the bank answered the complaint asserting duress, undue influence, failure of consideration, no consideration and estoppel. A counterclaim was filed naming Howard Hoeppner as third party defendant and sought the recission of the transactions in question, an accounting and damages, or in the alternative a foreclosure of the mortgages.

■ The Court of Appeals opinion in this case does an excellent job of setting forth the law concerning arms-length contracts between parties and the law concerning conditional gifts. However, in the case at bar, we believe the trial judge to be correct in his observation that Alwilda was interested in, and in fact did give, a gift to the appellees in 1984. Although she complained about having to do so much paper work to accomplish the simple gift she went along with Mrs. Miller's advice, which in fact was sound, to enter into an agreement which would minimize her gift tax liabilities. We agree with the trial judge's observation that there never was any intent on the part of Alwilda to exercise any dominion whatever over the property after 1984, that she never had any expectation of collecting payments from the appellees, and that the gift was meted out piecemeal for the sole purpose of taking advantage of the gift tax situation.

We have held that a court of equity has the power to require that to be done which should have been done. *Rosenbloom v. Hutchins* (1944), 222 Ind. 590, 55 N.E.2d 315; *see also Skendzel v. Marshall* (1973), 261 Ind. 226, 301 N.E.2d 641, *cert. denied.* 415 U.S. 921, 94 S.Ct. 1421, 39 L.Ed.2d 476; and *In re Webb* (S.D.Ind.1958), 160 F.Supp. 544. The evidence is clear in this case that Mrs. Walter at all times wanted to make an outright gift of the property to the appellees and that Mrs. Miller formulated the contract to accomplish this purpose. Never at any time did Mrs. Miller do anything to jeopardize Mrs. Walter's intention.

It also has been stated that "equity looks to the substance and not the form." *See Mishawaka St. Joseph Loan & Trust Co. v. Neu* (1935), 209 Ind. 433, 450, 196 N.E. 85, 92 and *Landaw v. Tucker Freight Lines, Inc.* (1970), 148 Ind.App. 48, 50, 263 N.E.2d 756, 758. When one looks solely to the technical form of the papers drafted in this case, the opinion of the Court of Appeals is right on target. However, in this case, the form was no more than that. We hold the technical form used to accomplish the inheritance tax purposes should not be used to defeat the express desire of Alwilda, which in fact was the substance of the entire transaction. The trial court was correct when it held that Alwilda's intent should prevail. In commenting on the maxim that "equity regards substance rather than form," Pomeroy had this to say:

"The principle involved in the maxim ... which is one of great practical importance, pervades and affects to a greater or less degree the entire system of equity jurisprudence,.... In fact, *it is only by looking at the intent rather than at the form, that equity is able to treat that as done which in good conscience ought to be done....* The two principles act together and aid each other, and it is by their universality and truth that much of equity jurisprudence which is peculiar and distinctive, in contrast with the law, has been developed. Equity always attempts to get at the substance of things, and to ascertain, uphold, and enforce rights and duties which spring from the

*real* relations of parties. It will never suffer the mere appearance and external form to conceal the true purposes, objects, and consequences of a transaction." 2 POMEROY, EQUITY JURISPRUDENCE § 378 (5th Ed.1941).

■ We also uphold the trial court's adjudication that:

"Alwilda Walter's revocation of the Second Codicil to her Last Will and Testament was a failure of the consideration for the 1985 promissory notes and mortgages. The 1985 transactions were rendered invalid by that revocation. Consequently, the 1984 real estate contract between the plaintiffs and Alwilda Walter was reinstated as of June 1, 1988."

■ A valid contract is not destroyed or affected by an attempt to execute an invalid contract in its stead. *Foster v. United Home Improvement Co., Inc.* (1981), Ind.App., 428 N.E.2d 1351. The manner in which the 1985 agreement was treated when Alwilda's niece and the bank took over her affairs effectively defeated her stated purpose and thus became void. The trial court was correct in holding that the 1984 agreement should be reinstated and the transaction completed accordingly.

Appellants claim: "The undue influence practiced on Alwilda Walter warrants rescission of all documents, an accounting, and a return of all property to Mrs. Walter: . . . ." The trial court in its findings of fact Nos. 38 through 41 found as follows:

"38. No evidence was presented as to any conspiracy between Howard Hoeppner and the plaintiffs to defraud Alwilda Walter.

39. No evidence was presented to support the allegation in the Third–Party Complaint that Howard Hoeppner mislead [sic] or duped Walter as to the true meaning and effect of the contracts for conditional sale of real estate.

40. No evidence was presented to support the allegation in the Third–Party Complaint that Howard Hoeppner acted as attorney-in-fact for Walter in certain financial transactions between Walter

and Balogh and Hoeppner following the 1984 contract.

41. No evidence was presented that upon being discharged as Walter's attorney-in-fact, Howard Hoeppner failed to cooperate or to account to Walter for his actions as her attorney-in-fact."

We find no reason to remand this case for further findings in this regard.

Appellants also claim that Alwilda Walter and the Fort Wayne National Bank should be granted a foreclosure judgment against the Hoeppners and Baloghs. In view of the foregoing, we find no merit to this contention.

In this opinion, we have been rather sketchy in setting forth the detail of the facts in this case and the detail of the trial court's judgment. We have done this in the interest of space because a more lengthy recitation of both is contained in the Court of Appeals opinion which is published as above cited. An interested reader may gain further detail from that opinion.

The opinion of the Court of Appeals is set aside and the trial court is affirmed.

SHEPARD, C.J., DeBRULER and DICKSON, JJ., concur.

KRAHULIK, J., dissents.