**William Lee ROBERTS, Jr., and Beverly Roberts, Appellants–Plaintiffs,**

v.

**ALCOA, INC., et al., Appellees–Defendants.**

No. 49A04–0303–CV–100.

Court of Appeals of Indiana.

July 7, 2004.

---

Linda George, W. Russell Sipes, Laudig George Rutherford & Sipes, Indianapolis, IN, Attorneys for Appellants.

Edward R. Hannon, Herbert W. Guy, Jr., Hannon Roop & Hutton, P.C., Indianapolis, IN, Attorneys for Eli Lilly and Company.

Kevin M. Toner, James W. Clark, Baker & Daniels, Indianapolis, IN, Attorneys for PSI Energy, Inc., Central Soya Company, Inc. n/k/a Bunge North America (East), Inc.

Eric M. Cavanaugh, Cinergy Services, Inc., Plainfield, IN, Attorney for PSI Energy, Inc.

Michael A. Bergin, Julia Blackwell Gelinas, Daniel M. Long, Locke Reynolds LLP, Indianapolis, IN, Attorneys for Amchem Products, Inc., Certain Teed Corporation, General Motors Corporation, and National Starch & Chemical Company.

Jason L. Kennedy, Segal McCambridge Singer & Mahoney, Ltd., Chicago, IL, Attorney for Anchor Packing Co., Cummins, Inc., Foster Wheeler L.L.C., Weil McLain And Garlock Sealing Techologies, LLC.

Michael K. Irwin, Philip R. Thompson, Stewart & Irwin, P.C., Indianapolis, IN, Attorneys for Indianapolis Power & Light Company.

Raymond L. Faust, Norris Choplin & Schroeder, LLP, Indianapolis, IN, Attorney for Brand Insulations, Inc.

Edward F. Harney, Jr., Janet Halline Nelson, Hume Smith Geddes Green & Simmons, LLP, Indianapolis, IN, Attorneys for BMW Constructors, Inc. and Aluminum Company of America, Inc., a.k.a., ALCOA, Inc.

Jeffrey S. Zipes, Coots Henke & Wheeler, P.C., Carmel, IN, Attorney for Dow Corporation and Knauf Fiberglass Co.

Douglas B. King, Andrew C. Charnstrom, Daniel D. Trachtman, Wooden & McLaughlin LLP, Indianapolis, IN, Attorneys for Shambaugh & Son LP, Oakfabco, Inc., and The Kroger Company.

Richard S. Ewing, Cynthia E. Music, Due Doyle Fanning Ewing & Metzger, LLP, Indianapolis, IN, Attorneys for Sprinkmann Sons Corporation of Wisconsin and Cleaver–Brooks Co., Inc.

Robert M. Baker, III, Hoover Hull Baker & Heath LLP, Indianapolis, IN, Attorney for Robert Carter Corporation.

Timothy C. Ammer, Montgomery Rennie & Johnson, Cincinnati, OH, Attorney for International Truck Co.

Knight S. Anderson, Keith J. Hays, Hill Fulwider McDowell Funk & Matthews, PC, Indianapolis, IN, Attorneys for Viacom, Inc., successor by Merger with CBS Corporation, formerly Doing business as Westinghouse Electric Corporation and A.W. Chesterton Company.

Kevin R. Knight, Mary Nold Larimore, Germaine Winnick Willett, Diana L. Wann, Nancy Menard Riddle, Laure Flaniken, Tanya R. Hatfield, David J. Mallon, Jr., Ice Miller, Indianapolis, IN, Attorneys for DaimlerChrysler Corporation and Pfizer Inc.

Jon L. Williams, Williams & Douglas, Indianapolis, IN, Attorney for Atlas Turner, Inc., and Bell Asbestos Mines, Ltd.

Kenneth T. Roberts, Tasha R. Roberts, Roberts & Bishop, Indianapolis, IN, Attorneys for Ford Motor Company.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellants–Plaintiffs, William Lee Roberts, Jr., and Beverly Roberts, (collectively, the Roberts), appeal the trial court's denial of their Motion to Allocate Courtroom Trial Expenses incurred by relocating the jury trial to a private venue.

We affirm.

### ISSUE

The Roberts raise one issue on appeal, which we restate as follows: whether the trial court erred in denying the Roberts' Motion to Allocate Courtroom Trial Expenses.

### FACTS AND PROCEDURAL HISTORY

In August of 2001, the Roberts filed the instant asbestos-related cause of action against approximately thirty-four defendants, including: Kroger Company, Central Soya Company, Inc., Cleaver–Brooks, Company, Inc., Eli Lilly and Company, PSI Energy, Inc., Shambaugh & Son, L.P., DaimlerChrysler Corporation, Pfizer, Inc., Ford Motor Company, D.B. Riley, Inc., Robert Carter Corporation, Certain Teed Corporation, Amchem Products, Inc., General Motors Corporation, National Starch and Chemical Company, Viacom, A.W. Chesterton, Inc., Brand Insulation, Inc., Anchor Packing Company, Garlock, Inc.,

Cummins, Inc., Foster Wheeler, LLC, Weil McLain, OakFabCo, Inc., Dow Chemical Corporation, Knauf Fiberglass Co., Indianapolis Power & Light Company, Combustion Engineering, Inc., Atlas Turner, Inc., Bell Asbestos Mines, Ltd., BMW Constructors, Inc., ALCOA, Inc., International Truck & Engine Corporation, and Sprinkman & Sons, Corporation. Subsequently, the Roberts filed their Motion for Expedited Jury Trial Date and Pre–Trial Conference, in which they alleged that William Lee Roberts, Jr., suffered from an incurable and fast-acting cancer, and requested an expedited trial date so that the matter could be tried before his death. On August 13, 2001, the trial court granted the Roberts' motion, and set their jury trial for March 19, 2002.

On Thursday, March 14, 2002, during the first day of the final pre-trial conference, the defendants learned of the Roberts' "contingency plan" to relocate the jury trial from the Marion County Superior Court 2 to a ballroom in the Indianapolis Athletic Club (IAC). (Appellants' App. p. 176). The Roberts explained they developed their plan in anticipation of the impending jury trial that involved "more parties [than] the present courtroom can reasonably accommodate." (Appellants' App. p. 176). They outlined their plan as follows:

LOCATION

Space is available at the [IAC]. The University Park Room, 3rd floor, at 4,200 square feet, is available as the courtroom. There would be a total of 4 satellite rooms: Court office/robing room; jury room; Plaintiffs' counsel/witness room; Defense counsel/witness room. One room is adjacent to the University Park Room; the other 3 are on the 9th floor.

ROOM SET–UP

COURTROOM

The courtroom would need to have a 10 person jury box on risers with comfortable chairs and a privacy screen. The Judge would have a bench on riser with desk/table space and privacy screen, good chair. The Bailiff and Reporter would be located to the side of the [b]ench with desk/table space and privacy screens, good chairs. Counsel would be provided with an appropriate number of tables and comfortable chairs. The witness box would be on a riser with privacy screen and small table space. Arrangement of bench, jury, witness, counsel spaces would be made in consultation with the [c]ourt and [c]ourt [a]dministrator.

Adequate chairs for a 45 person panel and for some spectators would be provided until a jury is picked. Afterward a spectators' area of about 15 seems adequate, giving more space for conduct of the trial.

JURY ROOM

The jury would be provided with sufficient tables and chairs. Water will also be provided. Travel from jury room and courtroom would be reduced to as short and private as possible.

COURT OFFICE

The [c]ourt's office would have a computer and/or hook-up, telephone, tables, chairs, electrical outlets, waste can and water service. It would be close to the courtroom. The adjacent room seems most appropriate, as there may be sound issues that would preclude putting the jury in that room.

COUNSEL ROOMS

Same arrangements as the [c]ourt's office.

TRANSPORTATION

There would be bus transport for the jury between the court house and [IAC] as needed. We anticipate a 50 passen-

ger bus for jury selection and a 12 passenger bus thereafter.

The [c]ourt would have any necessary parking at the [IAC], which will be by valet.

SERVICES

The [IAC] has food service in the dining room and can arrange service in any of the satellite rooms as needed. The [c]ourt/[c]ounsel rooms would have a telephone in each. The [c]ourt/courtroom would have high-speed internet access available.

The courtroom would have computers and/or hook-ups for the Judge, Bailiff and Court Reporter. There would be sound amplification for witnesses/counsel and court as needed.

Additional parking is available at regular cost.

(Appellants' App. pp. 176–7).

On March 14, 2002, the trial court also accepted the Roberts' proposed plan to move the jury trial to the IAC. To that effect, the trial court made the following comments:

[S]ubject to the [c]ourt's approval to basic configurations, [ ] it is my duty and I think my goal to make sure that there [are] sufficient facilities for all to be there. So anyway I have authorized the [Roberts] pursuant to the memorandum to go forth making arrangements with voir dire at the [IAC], these costs to be born by the [Roberts], I am going to however, because of the appearance that that has, I am going to issue an Order that that [sic] fact that [the Roberts] are making, are paying for these arrangements, that we seal that information so that parties and people that the [Roberts] are volunteering to do this, if they didn't do it, I am not sure what we would do. But in any event, so that the appearance of purchasing justice is something that ought to be high on our

minds and of course that is not at all what [the Roberts] are attempting to do, what [the Roberts] are attempting to do is bring their case to court.

(Transcript of Final Pre–Trial Hearing pp. 121–2). Shortly thereafter, the Roberts' trial counsel suggested that the trial court and representatives from the defense arrange to meet at IAC the following day to "make some decisions about general layout and things." (Tr. of Final Pre–Trial Hearing p. 124).

On Monday, March 18, 2002, during the last day of the final pre-trial conference, and following the Friday, March 15th preview of the proposed IAC trial site, twenty-seven defendants filed their Joint Defense Motion Objecting to Order Scheduling Trial at [IAC] and Requesting Continuance of Trial Date (motion). In their motion, the defendants objected to moving the jury trial to the IAC on the following bases:

1.  Defendants did not receive notice of the suggestion that the trial may be removed from the City County Building to the [IAC] until the hearing on March 14, 2002, wherein the decision to move the trial was essentially made. Thus, Defendants had no input into the decision.

2.  The building selected is a former exclusive men's club with a controversial background that at one time excluded minorities and women from its membership. The move detracts the dignity and solemnity of the case by removing it from the courtroom setting to a social club making it less likely the Defendants will receive due process and a fair trial.

3.  The parties were not advised of the need to search for an alternative site for the trial in time to conduct a thorough search of governmental

buildings and locations which may have space to accommodate the surroundings. Defendants maintain the trial should be scheduled in a government facility instead of a private club which gives the impression of exclusivity to the jury. This move is inherently prejudicial to the Defendants because it elevates the case in the jurors mind, it makes the jury believe there is something different or special about this particular case that may result in a higher verdict or a refusal to render a defense verdict when deserved based on the implied special nature of the case.

4. According to the Memorandum provided by the [Roberts] on Friday, March 15, 2002, on Verilaw at 7:30 p.m. the equipment in the [c]ourt room will be unequally distributed in that video monitors will not be provided for the defense and only one microphone will be provided at a stand for thirty-three (33) Defendants.

5. Defense counsel have been advised there are offensive fixtures in certain rooms at IAC which bear striking resemblance to Nazi swastikas which are generally considered offensive and may be seen by the jury.

6. Defendants move for a continuance of the current trial date in order to locate a facility owned by the city, state or federal government for the trial of this matter.

(Appellant's App. pp. 182–3). However, the trial court noted several examples from previous cases where a single party bore elective expenses during a trial. In addition, the trial court stated that, due to the nature of the litigation in the instant case, along with the number of defendants involved and the inadequacy of the space

in the Marion County courtroom facilities, it felt that the IAC offered the most reasonable alternative as an off site trial location. As a result, the trial court overruled defendants' objection to utilizing the IAC ballroom as a courtroom for the jury trial, and denied defendants' request for a continuance.

On March 19, 2002, the jury trial in this matter commenced at the IAC. On April 30, 2002, the Roberts filed their Motion to Allocate Courtroom Trial Expenses with the trial court. The trial court did not rule on the Roberts' motion before the end of the trial on May 24, 2002. As of that date, thirty of the thirty-four defendants had either been dismissed from the trial or had settled with the Roberts. With regard to three of the four remaining defendants, the jury entered its verdict in favor of Defendants Central Soya Inc., Eli Lilly and Company, and the Kroger Company and against the Roberts. With regard to PSI Energy Inc. (PSI), the jury entered its verdict in favor of the Roberts and against PSI. The jury assessed 13% fault against PSI; therefore, of the combined award of $3,800,000 to the Roberts, PSI's 13% portion was $494,000 with no punitive damages.

Thereafter, on June 12, 2002, the Roberts filed their Supplement to the Motion to Allocate Costs, in response to which the majority of defendants filed objections. As a result, the trial court conducted a hearing on the Roberts' motion on July 18, 2002. On November 22, 2002, the trial court entered an order denying the Roberts' motion, with the exception of its directive to defendants PSI, National Starch & Chemical Co., and Central Soya, Inc., to reimburse the Roberts the sum of $8,227.50 for their share of the document display system rental. On December 23, 2002, the Roberts filed their Motion to

Correct Error, which was deemed denied on February 6, 2003.

The Roberts now appeal. Additional facts will be supplied as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review* [1]

Both parties correctly assert that the issue of the allocation of trial expenses in this matter sounds in equity. Our supreme court has held, "a court of equity has the power to require that to be done which should have been done." *Shell Oil Co. v. Meyer*, 684 N.E.2d 504, 520 (Ind.Ct.App.1997)(quoting *Walter v. Balogh*, 619 N.E.2d 566, 568 (Ind.1993)). In this same vein, we have held that trial courts have full discretion "to fashion equitable remedies that are complete and fair to all parties involved." *Id.* (quoting *Hammes v. Frank*, 579 N.E.2d 1348, 1355 (Ind. Ct.App.1991)). Therefore, we consider the circumstances of this case to determine whether the trial court abused its discretion in denying the Roberts' Motion to Allocate Courtroom Trial Expenses. A trial court abuses its discretion when its determination is against the logic and effect of the facts and circumstances before it and the inferences that may be drawn therefrom. *Dughaish ex rel. Dughaish v. Cobb*, 729 N.E.2d 159, 167 (Ind.Ct.App. 2000).

### II. *Obligation of Marion County*

The Roberts assert that the trial court abused its discretion in denying their Motion to Allocate Courtroom Trial Expenses. Specifically, they contend that the defendants were unjustly enriched as a result of the trial court's failure to allocate expenses more equitably to some or all of the parties participating in the jury trial. Alternatively, the Roberts argue that many of the expenses should have been allocated to Marion County. We address this contention first.

Ordinarily, the responsibility of providing courtroom facilities in Marion County falls upon the city-county council, as follows:

> The city-county council shall provide and maintain in the building and at other places in Marion County as the court may determine suitable and convenient courtrooms for the holding of court, suitable and convenient jury rooms, and offices for the judges, other court officers and personnel, and other facilities as may be necessary. The city-county council shall also provide all necessary furniture and equipment for rooms and offices of the court.

Ind.Code § 33–5.1–2–12(b).

However, in the instant case, the Roberts presented their contingency plan to the defendants and the trial court approximately five days prior to trial. The highly detailed plan indicates that the Roberts spent considerable—albeit, unilateral—time and effort making arrangements to move the trial. As stated in the facts above, on the day the plan was presented, the trial court made the following comments:

> [S]ubject to the [c]ourt's approval to basic configurations, [ ] it is my duty and I think my goal to make sure that there [are] sufficient facilities for all to be there. So anyway I have authorized the [Roberts] pursuant to the memorandum to go forth making arrangements with voir dire at the [IAC], these costs to be

---

**1.** At the outset, we note that the Roberts fail to state the applicable standard of review in their brief. This omission is in violation of Ind. Appellate Rule 46(A)(8)(b). *See In re the*

*Paternity of Baby W,* 774 N.E.2d 570, 575 n. 2 (Ind.Ct.App.2002); *Mid State Bank v. 84 Lumber Co.,* 629 N.E.2d 909, 911 n. 1 (Ind.Ct.App. 1994).

born by the [Roberts], I am going to however, because of the appearance that that has, I am going to issue an Order that that [sic] fact that [the Roberts] are making, are paying for these arrangements, that we seal that information so that parties and·people that the [Roberts] are volunteering to do this, if they didn't do it, I am not sure what we would do. But in any event, so that the appearance of purchasing justice is something that ought to be high on our minds and of course that is not at all what [the Roberts] are attempting to do, what [the Roberts] are attempting to do is bring their case to court.

(Tr. of Final Pre–Trial Hearing pp. 121–2). The record is replete with additional references to this understanding by the trial court and the parties involved. At no time during these references, or anytime thereafter until they filed their Motion for Allocation of Courtroom Trial Expenses, did the Roberts object to or question the trial court's assumption that they would be paying for the expenses related to the IAC jury trial. Therefore, we find ample evidence to show that the Roberts offered to shoulder the expense for moving the jury trial to the IAC in the interest of moving forward on the scheduled date of trial.[2]

■ We have previously held that, although the expense of litigation confronts all litigants, unless otherwise provided by statute, rule, or agreement, each party

bears his own expense. *AgMax, Inc. v. Countrymark Co-op., Inc.*, 661 N.E.2d 1259, 1261 (Ind.Ct.App.1996). Given the circumstances in the case at bar, we are able to expand this well-settled notion to hold that, here, there was an agreement that the Roberts would pay for the jury trial expenses at the IAC, and that the trial court relied on that agreement in denying the defendants' strenuous objections to proceeding with the jury trial at the IAC. Accordingly, we find that the mandate of I.C. § 33–5.1–2–12 was bypassed by the agreement, thereby relieving the city-county council of its obligation to provide and maintain a courtroom for the trial of this cause. As a result, the trial court did not abuse its discretion in denying the Roberts' Motion to Allocate Courtroom Trial Expenses.[3]

### III. *Unjust Enrichment*

This determination brings us to the parties' arguments for equitable remedies. The Roberts assert that defendants were unjustly enriched due to the trial court's denial of their Motion to Allocate Courtroom Trial Expenses. Conversely, the defendants argue that they received no benefit from the Roberts' offer to pay for the jury trial at the IAC, therefore, they were not unjustly enriched. We agree with the defendants.

■ The theory of recovery for unjust enrichment involves the existence of a qua-

**2.** The Roberts also assert that their having to bear the expenses of trying the case at the IAC violates Article I, Section 12 of the Indiana Constitution. Nonetheless, they offer no citations to authority and offer no argument in support of their contention. *See* App. R. 46(A)(8)(a). Moreover, as we have determined that the Roberts agreed to pay the expenses, the Roberts have no basis for their alleged state constitutional violation. *See State ex rel. Haberkorn v. DeKalb Circuit Court*, 251 Ind. 283, 241 N.E.2d 62, 69 (Ind. 1968)("This court has frequently held that one

must show injury before he can insist upon asserting a constitutional right").

**3.** The Roberts also argue that this court should adopt the State of California's methods of allocating expenses in asbestos litigation and California's more flexible definition of "costs." However, because we determine that the instant expenses will not be allocated, we likewise decline to adopt the California model of cost allocation.

si contract, also known as a contract implied in law. *Savoree v. Industrial Contracting & Erecting, Inc.,* 789 N.E.2d 1013, 1017 (Ind.Ct.App.2003). A quasi contract is not a contract in the true sense; rather:

> [t]hey rest on a legal fiction imposed by law without regard to assent of the parties. They arise from reason, law, and natural equity, and are clothed with the semblance of contract for the purpose of a remedy. No action can lie in quasi contract unless one party is *wrongfully* enriched at the expense of another.

*Id.* (quoting *Indianapolis Raceway Park, Inc., v. Curtiss,* 179 Ind.App. 557, 559, 386 N.E.2d 724, 726 (1979))(emphasis added). Put another way, "the pivotal concept of 'unjust enrichment' is the occurrence of a wrong or something unjust." *Id.* at 1019.

■ Our review of the record reveals that the defendants were not wrongfully enriched at the expense of the plaintiffs. A few days before trial, the Roberts offered up their well-thought out contingency plan to move the trial to the IAC. The record is replete with references to the trial court's understanding that the Roberts were offering to pay the expenses of conducting the trial at the IAC. At no time do the Roberts suggest otherwise. The trial court accepted their offer over the defendants' strenuous objections. Thus, the defendants had no choice but to rely on the Roberts' offer to pay the IAC expenses. Accordingly, we find that the defendants were not unjustly enriched by the Roberts' payment of the IAC courtroom expenses.

## IV. *Estoppel*

■ Moreover, defendant, Eli Lilly and Company (ELC), argues that the Roberts are estopped from recovering the expenses of the IAC jury trial. Estoppel is a judicial doctrine sounding in equity. *Brown v. Branch,* 758 N.E.2d 48, 51 (Ind.

2001). There are several estoppel doctrines, including equitable estoppel, judicial estoppel, promissory estoppel, estoppel by record, estoppel by deed, and collateral estoppel. *Id.* However, all forms of estoppel are based upon the same underlying concept, which is: a person, who, by deed or conduct, has induced another to act in a particular manner, will not be permitted to adopt an inconsistent position, attitude, or course of conduct that causes injury to the other. *Id.*

■ ELC specifically contends that the doctrines of equitable and judicial estoppel apply in this case to prevent the Roberts from requesting trial expenses. Generally, equitable estoppel involves a misrepresentation and detrimental reliance, but is not strictly limited to circumstances involving an actual false representation or concealment of existing fact. *Clark v. Crowe,* 778 N.E.2d 835, 840 (Ind.Ct.App.2002). Considering the facts, we find that application of the doctrine of equitable estoppel would be somewhat tenuous in the case at bar. Nonetheless, the doctrine of judicial estoppel clearly applies.

■ "Judicial estoppel prevents a party from asserting a position in a legal proceeding inconsistent with one previously asserted." *Id.* at 841. Judicial estoppel applies to the relationship between a litigant and the judicial system. *Id.* For this reason, the purpose of judicial estoppel is to protect the integrity of the judicial process rather than to protect the parties to a case from improper conduct by their adversaries. *Id.*

■ Here, the Roberts complain that the trial court abused its discretion in not allocating the courtroom trial expenses despite their pre-trial offer to pay the expenses incurred as a result of moving the jury trial to the IAC. As determined previously, we may infer from the record that

the parties understood that the Roberts elected to bear the cost of conducting the jury trial at the IAC for the sake of expediting the litigation. The trial court relied on this understanding and, as ELC argues in its Appellee's Brief, the trial court's overruling of their objection to the Roberts' offer created an "imposed reliance" on the part of the defendants. (ELC Appellee's Br. p. 11). As a result, it would be inequitable to order allocation of the IAC courtroom trial expenses among the defendants and Marion County. *See Clark,* 778 N.E.2d at 841. Consequently, the Roberts are judicially estopped from recovering expenses for moving the jury trial to the IAC.

### V. *Cost of Document Display System*

Lastly, the Roberts contend that the trial court erred in its order to defendants PSI, National Starch & Chemical Co., and Central Soya, Inc., to reimburse the Roberts $8227.50 for the document display system rental. In particular, the Roberts argue that the trial court merely adopted the defendants' offer to pay that specific amount without requiring a mathematical explanation for how they arrived at that sum. However, the Roberts cite to no authority in support of their assertion. As a result, we are unable to address this contention. *See* App. R. 46(A)(8)(a).

### CONCLUSION

Based on the foregoing, we conclude that the trial court did not abuse its discretion in denying the Roberts' Motion to Allocate Courtroom Trial Expenses.

Affirmed.

KIRSCH, C.J., and VAIDIK, J., concur.