**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**ROBERT J. PALMER**
May Oberfell Lorber
Mishawaka, Indiana

ATTORNEY FOR APPELLEES:

**DOUGLAS C. MCMILLAN**
McMillan Law Offices, P.C.
Valparaiso, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KAREN J. MARSHALL, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 64A03-1212-MF-517 |
| | ) | |
| CASA M. MARSHALL, CENTER BANK, | ) | |
| TREASURER OF PORTER COUNTY, | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellees-Defendants. | ) | |

APPEAL FROM THE PORTER SUPERIOR COURT
The Honorable Roger V. Bradford, Judge
Cause No. 64D01-0905-MF-5075

**August 13, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Karen Marshall ("Karen") filed a mortgage foreclosure complaint against her daughter, Casa Marshall, Centier Bank, and the Treasurer of Porter County (collectively, "Casa"). The trial court concluded that the mortgage and loan documents were unenforceable because the real estate had been gifted and Casa was granted summary judgment. Karen presents a single, consolidated issue on appeal: whether summary judgment was improvidently granted. We affirm.

**Facts and Procedural History**

Karen and her husband Ted Marshall had five children, including Casa, all of whom were employed in the family excavation business. In 2004, just after Ted's death, $2,000,000.00 worth of stock was transferred to the five children, and 72% was held in a marital trust with Karen as the beneficiary. Karen was advised that the then-applicable federal gift tax exclusion was thus exhausted.

The Marshalls also owned real estate located at 452 Hayes Leonard Road in Valparaiso, Indiana ("the Property"). Casa had resided rent-free at that residence for approximately twenty years when, on August 2, 2004, Karen deeded the Property to Casa. In turn, Casa executed documents designated as a real estate mortgage and note. According to Karen's deposition testimony, she had "suddenly decided" upon her husband's death to hold a mortgage on the property. (App. 61.)

Karen's estate planning attorney had advised her that she was able to make annual gifts of $11,000.00 per person without incurring gift taxes. With regard to the Property,

2

Karen's attorney drafted a mortgage and note to reflect an exchange of monies equal to the annual gift tax exclusion for gifts to two individuals, then $22,000.00. Initially, Karen gifted $11,000.00 to each of Casa's two children; the checks were endorsed and given to Casa; Casa tendered the funds back to Karen as a "down payment" on the real estate. The stated purchase price of $222,000.00 was reduced by the "down payment." For successive years, Casa's annual mortgage payment was to be $22,000.00, although $24,000.00 was tendered in 2007, mirroring a gift tax exclusion increase. Pursuant to this arrangement, the note was scheduled to be paid in full by January 1, 2016. It included a forgiveness provision in the event Karen died before full payment was tendered.

For four years, Karen complied with the "gifting mechanism" whereby she would give checks to Casa's children in an amount equal to the annual mortgage payment, the children would endorse the checks, and Casa would tender the funds to Karen. (App. 62.) However, this changed when Casa's thirty-four-year employment at the family business was terminated by her brothers and she filed a lawsuit alleging that she was a victim of sex and age discrimination. Afterwards, Karen "didn't see much point" in continuing with the gifting mechanism that involved Casa's children. (App. 62.) However, Karen continued to issue gift checks to her other grandchildren and corresponding funds would be returned to her for the payment of life insurance premiums.

In 2009, Casa attempted to tender a payment but Karen refused it as delinquent. On May 14, 2009, Karen brought a foreclosure complaint, naming as defendants Casa, a bank that had issued Casa a home equity line of credit, and the county treasurer. Casa answered

3

the complaint and moved for summary judgment, contending that the mortgage and note were executed solely for estate tax purposes and had not been meant to establish Casa's personal indebtedness.

After conducting a summary judgment hearing, the trial court granted summary judgment to Casa in an order providing in pertinent part:

> Plaintiff's response to the Motion for Summary Judgment suggests that this mortgage foreclosure action should be treated as a contract action and not as an action in equity. Plaintiff's Complaint is an action to foreclose a mortgage lien. Historically, actions to foreclose liens have been treated as equitable actions, not actions at law. Therefore, the Court determines that contract law does not apply to the present motion and that Plaintiff's response is not relevant to the issues at hand.
>
> The Court finds that there are no genuine issues of material fact as they relate to Defendant Casa Marshall's motion. It is clear that the Note and Mortgage involved here were put together as part of a legal scheme to avoid payment of gift taxes. It is equally clear that it was Plaintiff's intention to give the real estate in question to Defendant Casa Marshall. . . .
>
> Defendant's Motion for Summary Judgment on Plaintiff's Complaint is granted, and it is ordered that the Mortgage and Note involved in this cause are void and that Defendant Casa Marshall owns the real estate in question free and clear of that Note and Mortgage.

(App. 5-6.) The trial court ordered the entry of a final judgment and this appeal ensued.

**Discussion and Decision**

Indiana Trial Rule 56 provides that summary judgment shall be rendered "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A genuine issue of material fact exists where facts concerning an issue that would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting

4

inferences on such an issue. Huntington v. Riggs, 862 N.E.2d 1263, 1266 (Ind. Ct. App. 2007), trans. denied.

The party moving for summary judgment bears the burden of establishing the lack of a material factual issue and, once the movant has met this burden, an opposing party is obliged to disgorge sufficient evidence to show the existence of a genuine triable issue. Cowe by Cowe v. Forum Grp., Inc., 575 N.E.2d 630, 633 (Ind. 1991). The opposing party's obligation does not arise until after the movant has shown entitlement to summary judgment. Id.

"In ruling upon a motion for summary judgment, facts alleged in a complaint must be taken as true except to the extent that they are negated by depositions, answers to interrogatories, affidavits, and admissions on trial or by testimony presented at the hearing on a motion for summary judgment." Id. The trial court may consider only properly designated evidence when deciding a motion for summary judgment. Kronmiller v. Wanberg, 665 N.E.2d 624, 627 (Ind. Ct. App. 1996), trans. denied.

In reviewing a trial court's ruling on summary judgment, we stand in the shoes of the trial court, and apply the same standards in deciding whether to affirm or reverse summary judgment. Warren v. Warren, 952 N.E.2d 269, 272 (Ind. Ct. App. 2011). We consider all of the designated evidence in the light most favorable to the non-moving party. Ind. Reg'l Recycling, Inc. v. Belmont Indus., Inc., 957 N.E.2d 1279, 1282 (Ind. Ct. App. 2011), trans. denied. The party appealing the grant of summary judgment bears the burden of persuading us that the trial court's ruling was improper. Id. A grant of summary judgment may be sustained on any theory or basis supported by the designated materials. Smith v. Yang, 829

5

N.E.2d 624, 625 (Ind. Ct. App. 2005).

Karen's complaint alleged that Casa had executed a valid mortgage and note and then defaulted upon the terms of the note. Casa contended that she had instead been the recipient of a completed gift, and the documents in question had been drafted for the sole purpose of avoiding gift taxes. In granting summary judgment for Casa, the trial court gave no binding effect to that which Casa alleged to be sham documents.

The existence of a contract is a question of law. Batchelor v. Batchelor, 853 N.E.2d 162, 165 (Ind. Ct. App. 2006). The basic requirements are offer, acceptance, consideration, and "a meeting of the minds of the contracting parties." Id. However, the intention of the parties to a contract is a factual matter which must be determined from all the circumstances. Zimmerman v. McColley, 826 N.E.2d 71, 76 (Ind. Ct. App. 2005).

A valid inter vivos gift requires the intent of a competent donor to make a gift, delivery by the donor and acceptance by the donee, the completion of the donation with nothing left undone, and the fact that the gift is immediate and absolute. Estate of Deahl, 524 N.E.2d 810, 811-12 (Ind. Ct. App. 1988), trans. denied. The donor's intent is generally a question of fact for the trial court. Id. at 812.

To support her argument to the trial court that a gift had been made despite the execution of documents purportedly evidencing indebtedness, Casa relied upon Walter v. Balogh, 619 N.E.2d 566 (Ind. 1993). Therein, the Court considered a sequence of events in which the donor made a gift, the gift was restructured so as to make the transferees mortgagors, and the donor's guardian brought a foreclosure action. In 1984, Alwilda Walter

6

decided to make gifts of land to her tenant farmers but was advised by her attorney that an immediate transfer would cause her to incur a large federal gift tax liability. See id. at 567. Accordingly, although immediate possession of the property was given to the tenant farmers, the attorney drafted contracts reciting a schedule of payments. See id. As each payment became due, it was forgiven and the donor could take advantage of the annual gift tax allowance. Alwilda's Will included a codicil providing that any indebtedness was to be forgiven at her death. See id.

In 1985, it was discovered that the property had been undervalued and the agreement was re-drafted to reflect an accurate value. Thereafter, the "indebtedness" forgiven was less than the accruing interest. In 1988, Alwilda began to exhibit confusion and a bank was appointed to be the guardian over her estate. See id. at 567-68. The bank issued a notice of default and the tenants filed a declaratory judgment "requesting the trial court to enter a judgment to the effect that the 1985 notes and mortgages were null and void and that the 1984 land contract was binding and enforceable." Id. at 568. On appeal, our supreme court affirmed the trial court's decision that Alwilda had made a gift in 1984, specifically agreeing with the trial court's observations:

> that there never was any intent on the part of Alwilda to exercise any dominion whatever over the property after 1984, that she never had any expectation of collecting payments from the appellees, and that the gift was meted out piecemeal for the sole purpose of taking advantage of the gift tax situation.

Id. In reaching its decision, the Court reiterated that "a court of equity has the power to require that to be done which should have been done" and "equity looks to the substance and not the form." Id.

7

> "Equity always attempts to get at the substance of things, and to ascertain, uphold, and enforce rights and duties which spring from the <u>real</u> relations of parties. It will never suffer the mere appearance and external form to conceal the true purposes, objects, and consequences of a transaction."

<u>Id.</u> (quoting 2 POMEROY, EQUITY JURISPRUDENCE § 378 (5th Ed. 1941)) (emphasis in original).

In an attempt to distinguish <u>Walter</u>, Karen points out that <u>Walter</u> involved a bench trial. She argues that a summary judgment order is not an appropriate disposition for the instant equitable defense to foreclosure. As we have previously observed, the intent of a contracting party or gift donor generally presents a factual question. <u>Zimmerman</u>, 826 N.E.2d at 76; <u>Deahl</u>, 524 N.E.2d at 812. However, where the movant for summary judgment has demonstrated the absence of any genuine issue of fact as to a determinative issue, they are entitled to summary judgment unless the non-movant comes forward with contrary evidence showing a triable issue for the trier of fact. <u>Williams v. Tharp</u>, 914 N.E.2d 756, 761-62 (Ind. 2009). Here, the deposition testimony as to the facts surrounding the transaction could lead to only a single conclusion with regard to the real relations of the parties. The trial court correctly applied the law to undisputed facts.

Casa testified that she was present at estate planning meetings after her father's death and the mortgage was drafted "to support the estate planning scheme." (App. 205.)

In her deposition testimony, Karen agreed that she had cooperated with a "gifting mechanism" for several years, whereby she wrote checks to Casa's children, the children gave the money to Casa, and Casa gave it back to Karen. (App. 62.) According to Karen, the payment had increased to $24,000.00 in 2007 because "I think 12 was allowed then – that I

8

could give to the children." (App. 62.) She "believed" this was a "maximum she could deduct from taxes." (App. 62.) Casa was "required to get this money back" to Karen. (App. 88.) Ultimately, the reason for writing the checks "was to pay [for] the house." (App. 182.) Karen explained that, in 2009, she decided not to continue with the procedure because of a deteriorated mother-daughter relationship and the EEOC lawsuit.

Karen also testified that Casa had not expended her personal funds to pay on the mortgage:

Question: You said you would have liked for her to pay on the mortgage?

Karen: Uh-huh.

Question: Had she ever paid on the mortgage?

Karen: Uh-uh.

Question: No? (Witness shaking head.)

Question: She's never paid, herself, for the mortgage; correct?

Karen: No.

Question: It's always been through – you've paid the mortgage; right? (Witness nodding head.) Let the record reflect she did shake her head yes.

Karen: Yes.

Question: So you've been paying the mortgage for the last five years, and she lived there with no mortgage the previous twenty years; correct?

Karen: Uh-huh. Yes.

(App. 86.)

Question: And she's never paid on it out of her own pocket until 2009 when she offered to pay it and you wanted the whole amount?

9

Karen: Yes.

(App. 88.) Karen further acknowledged the underlying purpose of the arrangement:

> Question: So the only reason that we have this mortgage is to support the gifting; correct?
>
> Karen: Say that again.
>
> Question: The reason we have this mortgage is to support the gifting that comes back to you; correct?
>
> Karen: Correct.
>
> Question: Yes?
>
> Karen: Yes.
>
> Question: Since the time of Ted's death, this was used as the estate planning to avoid the state [sic] taxes, correct? That's how we were doing the gifting?
>
> Karen: Uh-huh.

(App. 88.) Finally, Karen acknowledged that Casa was to receive financial assistance consistent with her late husband's wishes, as the brothers were expected "to see that Casa was all right" and "she was to be helped if she needed some help for something." (App. 37.)

Karen further acknowledged:

> Question: I'm referring to when Ted died. Was there a discussion as far as the three sons getting the life insurance policies and Roger and Casa would be taken care of otherwise? [objection by counsel]
>
> Answer: I would say probably yes, but I don't –
>
> Question: So there was discussion of the house?
>
> Attorney for Karen: She's still answering.

10

Karen:  I – I'm – I think that's probably true.  I would say yes.

(App. 171-72.)[1]  Although Karen proffered the legal conclusion that she had not made a gift of the Property to Casa, her deposition testimony of the factual circumstances surrounding the deed transfer is consistent with that of her daughter.

The designated materials establish that Karen, like the donor in Walter, gave Casa possession of the Property without intent to thereafter exercise dominion over it, and that, at the time of drafting the documents, Karen had no expectation of collecting payment from Casa.  Rather, there was a "gift meted out piecemeal for the sole purpose of taking advantage of the gift tax situation."  Walter, 619 N.E.2d at 568.

We agree with the trial court's determination that the mortgage and loan documents did not constitute a valid and enforceable contract, as the subject property had been gifted.  Summary judgment was properly granted to the defendants in the foreclosure action.

Affirmed.

NAJAM, J., and BARNES, J., concur.

---

[1] Casa had testified that three of her brothers received $250,000.00 each in life insurance proceeds upon their father's death and the remaining brother was assisted with building a house.