**RITZERT CO., INC., Electrical Maintenance & Construction, Inc., O'Daniel Trucking Co., Inc., and C.W. Lewis Steel Erection, Inc., Appellants–Plaintiffs,**

v.

**UNITED FIDELITY BANK, FSB, Tyme Properties, LLC, Specialty Contracting Consultants, Inc., and Warehousing, Inc., Appellees–Defendants.**

No. 82A04–1001–PL–35.

Court of Appeals of Indiana.

Oct. 15, 2010.

Inc., ("EMCI"); O'Daniel Trucking Company, Inc., ("O'Daniel Trucking"); and C.W. Lewis Steel Erection, Inc. ("Lewis Steel") (collectively, "the Contractors") appeal the trial court's grant of summary judgment for United Fidelity Bank, FSB ("United").[2] The Contractors contend that United was silent when it had a duty to notify them that its borrower's construction loan had been fully disbursed and that the loan was in default when they worked on a construction project financed by United. The Contractors assert that United was unjustly enriched and is liable to them for the value of their labor and materials. We conclude that United, which made no request, express or implied, to the Contractors for their services did not otherwise owe a duty to the Contractors. Thus, we hold that the trial court properly granted summary judgment for United on the Contractors' claim for unjust enrichment.

## FACTS AND PROCEDURAL HISTORY

On June 12, 2007, Tyme Properties, Inc. ("Tyme") and United executed a $4.5 million loan for Tyme to acquire and improve real property in Evansville. The loan provided funds for the construction of a warehouse on the property and was secured by a mortgage to United that was duly recorded. To construct the warehouse, Tyme hired Specialty Contracting Consultants, Inc. ("SCCI") for "construction management services."[3] Appellants' App. at 173. Subsequently, SCCI hired the Con-

Leslie C. Shively, Shively & Associates, P.C., Evansville, IN, Attorney for Appellants.

Jeffrey W. Henning, Joseph H. Langerak, IV, Rudolph, Fine, Porter & Johnson, LLP, Evansville, IN, Attorneys for Appellee United Fidelity Bank, FSB.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE[1]

Ritzert Company, Inc., ("Ritzert"); Electrical Maintenance and Construction,

---

1. We held oral argument on August 25, 2010.

2. The trial court certified its grant of summary judgment to United as a final, appealable order. Tyme Properties, LLC, Specialty Contracting Consultants, Inc., and Warehousing, Inc. ("Warehousing") were not awarded

summary judgment and have not filed briefs in this appeal.

3. These services included invoicing the work of "partnering subcontractors." Appellants' App. at 178.

tractors to work on the project.[4]

United made periodic disbursements from the loan after receiving an application for funds from either SCCI or Tyme.[5] Before disbursing any loan proceeds, however, United would send agents to visit the site and "inspect the progress of the construction." *Id.* at 180. That is, United would verify that the work for which progress payments were requested had in fact been completed.

Sometime before the end of November 2007, Tyme defaulted on its loan payments to United.[6] Nonetheless, on November 30 United made its final distribution of the loaned funds. United was aware that the construction project was not yet complete at that time and noted that "[r]oofing for [the] building [was] being installed" during the last inspection. *Id.* at 197. Overall, the project was "maybe 75% complete" as of November 15, 2007. *Id.* at 165. SCCI informed United that the project was over budget by about $300,000, which United believed would be paid personally by the

owners of Tyme. On April 1, 2008, Tyme obtained a temporary certificate of occupancy.

Between April 9, 2008, and June 27, 2008, the Contractors filed their respective mechanic's liens. Specifically, contractor Lewis Steel's April 9 notice of a mechanic's lien asserted a lien in the amount of $71,833.34 "for work and labor done . . . within the last sixty days." *Id.* at 68. Contractor Ritzert's April 23 notice asserted a lien in the principal amount of $134,153.87 "for services, labor, equipment, materials and other services related to work performed, including but not limited to, work performed as a General Contractor, fire protection work, plumbing and HVAC work . . . which . . . were furnished . . . within the last ninety (90) days." *Id.* at 65. Also on April 23, EMCI asserted an unpaid lien amount of $29,733.34 for "labor, services or materials" furnished between April 20, 2007, and February 27, 2008.[7] *Id.* at 69. And O'Daniel Trucking's

---

**4.** The Contractors dispute being characterized as "subcontractors." Reply Br. at 2. In their reply brief, they claim that they were each hired "as general contractors" by "SCCI on behalf of Warehousing . . . to complete the various components of the warehouse project." *Id.* (emphases removed). We note that Roy Ritzert, president of Contractor Ritzert, stated in an affidavit that Ritzert "was the general contractor" for the project. Appellants' App. at 165. However, none of the Contractors designated their employment contracts and, in their reply brief, they acknowledge that they were hired by and worked under the direction of SCCI. *See* Reply Br. at 2.

Because the question of whether the Contractors were general contractors or subcontractors is irrelevant to our disposition, we accept the Contractors' suggestion that they were each general contractors. However, if in the future the Contractors wish to avoid the risk of a judicial determination that they acted as subcontractors, the Contractors should be mindful of entering into clearly articulated

contracts and submitting those contracts to the court.

**5.** Tyme is owned by Stephen T. Weber and other Weber family members, who also own Warehousing. Although Tyme is identified as the purchaser of the real property, Tyme leased the real property to Warehousing and United often received fund-distribution requests from Weber in the name of either Tyme or Warehousing. The parties' briefs often refer to Tyme, Warehousing, and Weber interchangeably. For ease of discussion, we refer only to Tyme unless specifically noted.

**6.** We question whether the Contractors' designated evidence supports this statement. *See* Appellants' App. at 240–41. But United does not expressly challenge the Contractors' assertion that Tyme defaulted in November 2007, and our decision is unaffected by that claim.

**7.** For clarity, we note that EMCI's lien claim is the only claim encompassing a timeframe during which United had yet to distribute the totality of the loan proceeds.

June 27, 2008, notice asserted a lien in the principal amount of $92,625.97 "for services, labor, equipment, materials and other services related to work performed, specifically, concrete pavement, sidewalks, air conditioner pad, curbs, gutters, roadway and other services ... furnished ... within the last ninety (90) days." *Id.* at 72.

On June 3, 2008, the Contractors filed their complaint against Tyme and others seeking to foreclose on their mechanic's liens and alleging breach of contract and unjust enrichment. In July, the Contractors amended their complaint to include United as a named defendant in light of United's recorded mortgage, although no specific allegations against United were made.

On December 11 United filed a "counter/crossclaim to foreclose" on the real property in the pending action. *Id.* at 31 (capitalization removed). On December 22, the Contractors amended their complaint to include a count of unjust enrichment against United. On December 30, United filed a motion for partial summary judgment against Tyme for "an amount sufficient to cover all monies due and owing United ... and a foreclosure sale...." Appellee's App. at 24. And on March 25, 2009, the trial court granted United's motion, entered judgment in the principal amount of $4,606,347.14, and ordered that the real property be sold at a sheriff's sale.

On June 25, United purchased the real property at the sheriff's sale for $1,000,000, which the trial court credited against United's money judgment. Title to the property was conveyed to United free and clear of the Contractors' mechanic's liens. On September 4, 2009, United filed for summary judgment on the Contractors' claim of unjust enrichment. On December 22, the trial court entered findings and conclusions granting United's motion. This appeal ensued.

## ARGUMENT

The Contractors contend on appeal that the trial court erred when it determined that their claim of unjust enrichment against United fails as a matter of law. Our standard of review for summary judgment appeals is well established:

> When reviewing a grant of summary judgment, our standard of review is the same as that of the trial court. Considering only those facts that the parties designated to the trial court, we must determine whether there is a "genuine issue as to any material fact" and whether "the moving party is entitled to a judgment a matter of law." In answering these questions, the reviewing court construes all factual inferences in the non-moving party's favor and resolves all doubts as to the existence of a material issue against the moving party. The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law; and once the movant satisfies the burden, the burden then shifts to the non-moving party to designate and produce evidence of facts showing the existence of a genuine issue of material fact.

*Dreaded, Inc. v. St. Paul Guardian Ins. Co.,* 904 N.E.2d 1267, 1269–70 (Ind.2009) (citations omitted). The party appealing from a summary judgment decision has the burden of persuading this court that the grant or denial of summary judgment was erroneous. *Knoebel v. Clark County Superior Court No. 1,* 901 N.E.2d 529, 531–32 (Ind.Ct.App.2009). Where, as here, a trial court enters findings and conclusions in granting a motion for summary judgment, the entry of such findings and conclusions does not alter the nature of our review but merely aids this court by

providing a statement of reasons for the trial court's action. *Rice v. Strunk,* 670 N.E.2d 1280, 1283 (Ind.1996).

■ The parties dispute whether the law of unjust enrichment that applies to claims brought by subcontractors against property owners applies here, or if, instead, a more "general standard" of unjust enrichment applies. *Compare McCorry v. G. Cowser Constr., Inc.,* 636 N.E.2d 1273, 1276 (Ind.Ct.App.1994) (discussing the four criteria used to determine whether an owner has been unjustly enriched by the work of a subcontractor), *expressly adopted,* 644 N.E.2d 550 (Ind.1994), *and Indianapolis Raceway Park, Inc. v. Curtiss,* 179 Ind.App. 557, 386 N.E.2d 724, 726–27 (1979) (same), *with Bayh v. Sonnenburg,* 573 N.E.2d 398, 408–09 (Ind. 1991) (discussing the general law of unjust enrichment). The Contractors contend that they are not subcontractors and, therefore, that the general law of unjust enrichment applies. But we need not resolve that dispute. Even assuming for purposes of argument that the general standard relied on by the Contractors applies here, we must agree with the trial court that United is entitled to summary judgment.

■ Our Supreme Court has described the doctrine of unjust enrichment as follows:

> A claim for unjust enrichment "is a legal fiction invented by the common law courts in order to permit a recovery . . . where the circumstances are such that under the law of natural and immutable justice there should be a recovery . . . ." "A person who has been unjustly enriched at the expense of another is required to make restitution to the other." To prevail on a claim of unjust enrichment, a claimant must establish that a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust.

*Zoeller v. E. Chicago Second Century, Inc.,* 904 N.E.2d 213, 220 (Ind.2009) (citations omitted). Further, as this court has stated:

> Even if there is no express contract, a plaintiff may sometimes recover under the theory of unjust enrichment, which is also called quantum meruit, contract implied-in-law, constructive contract, or quasi-contract. . . .
>
> Principles of equity prohibit unjust enrichment in cases where a party accepts the unrequested benefits another provides despite having the opportunity to decline those benefits. . . .
>
> *A party seeking to recover on a theory of quantum meruit must demonstrate that a benefit was rendered to another at the express or implied request of such other party.* The plaintiff must also demonstrate that to allow the defendant to retain the benefit without paying for it would be unjust and that the plaintiff expected payment. . . .

*Kelly v. Levandoski,* 825 N.E.2d 850, 860–61 (Ind.Ct.App.2005) (emphasis added; citations, quotations, and footnote omitted), *trans. denied.*

The Contractors contend that United impliedly requested that they work on the project. In essence, the Contractors allege that United knew that the construction loan had been fully disbursed, that Tyme was in default on the loan, and that the project was still incomplete. Thus, the Contractors continue, United was silent when it had a duty to speak, namely, to disclose to the Contractors that the construction loan was a troubled credit. According to the Contractors, United's failure to disclose that information amounted

to an implied request by United for the Contractors to work on the project.

The Contractors acknowledge that no Indiana case directly supports their argument. Still, the Contractors contend that one Indiana case is analogous and that two other Indiana cases [8] hold "that an implied request will be established unless the evidence clearly reveals that the services were provided gratuitously." Appellants' Br. at 8. United's designated evidence in support of its motion for summary judgment demonstrates that it neither expressly nor impliedly requested that the Contractors work on the project, and the Contractors' designated evidence in response does not identify an express or implied request by United to any of the Contractors.

We first address the Contractors' contention, made at oral argument, that our opinion in *Encore Hotels of Columbus, LLC v. Preferred Fire Protection*, 765 N.E.2d 658 (Ind.Ct.App.2002), is analogous and supports their assertion in this appeal. In that case, we considered an unjust enrichment claim raised by a subcontractor against a property owner where the property owner had paid neither the general contractor nor the subcontractors. Distinguishing the specialized case law for subcontractor-property owner disputes, we stated:

> Both *Stafford* [*v. Barnard Lumber Co.*, 531 N.E.2d 202, 204 (Ind.1988),] and *Indianapolis Raceway Park* involved owners who paid general contractors for work done by subcontractors, but those subcontractors sued the owners under the theory of unjust enrichment after the general contractors failed to pay the subcontractors. Those are not the facts in this case, where Encore [the property owner] has not paid anyone for the labor and materials [subcontractor] Preferred Fire provided between December 21, 1997[,] and January 31, 1998. Under these circumstances, we hold that the four criteria set out in *Stafford* and *Indianapolis Raceway Park* do not apply. Instead, we apply the general rule that Preferred Fire must establish it conferred a measurable benefit on Encore and that Encore's retention of the benefit without payment is unjust.

*Id.* at 662.

*Encore* does not apply to the Contractors' claims. In *Encore*, the property owner "took over as general contractor on the project" and expressly "accepted Preferred Fire as a subcontractor to perform the work" requested. *Id.* Further, the property owner refused to pay both the prior general contractor and the subcontractors. That is simply not the case here. United has had no dealings or relationship with the Contractors. And United did remit the loan proceeds to either the property owner, Tyme, or the construction manager, SCCI, with whom the Contractors did business.

Not only does *Encore* not apply, but well-settled Indiana law is against the Contractors in their assertion that United had a duty to disclose to them that Tyme's construction loan was a troubled credit. In *Indiana National Bank v. Chapman*, 482 N.E.2d 474 (Ind.Ct.App.1985), *trans. denied*, we considered whether a bank had

---

8. The Contractors also distinguish three other cases cited by the trial court, namely, *Wenning v. Calhoun*, 827 N.E.2d 627 (Ind.Ct.App. 2005), *trans. denied; Knowles & Assocs. v. Cook*, 784 N.E.2d 1063 (Ind.Ct.App.2003); and *Wright v. Pennamped*, 657 N.E.2d 1223, 1230 (Ind.Ct.App.1995), *clarified on denial of reh'g*, 664 N.E.2d 394 (Ind.Ct.App.1996). But the court only casually cited those opinions for general principles of unjust enrichment law. And, in its responsive brief, United does not challenge the Contractors' claim that those cases are factually distinguishable. We, therefore, do not discuss those cases.

breached an implied contract with its customer when it disclosed to law enforcement officials, in the course of an official investigation, that the bank was considering repossessing a troubled asset of the customer's. We stated as follows:

That a Bank has an implied contract not to disclose certain financial information pertaining to its depositors has been accepted by American courts and authorities.

The point of dissension is under what particular circumstances will a bank be released from its implied duty not to disclose financial information about its customers. . . .

. . . We hold a bank impliedly contracts only that it will not reveal a customer's financial status unless a public duty arises. Communication to legitimate law enforcement inquiry meets the public duty test.

*Id.* at 480–82 (citations omitted); *see, e.g.,* 12 U.S.C. § 3403 ("No financial institution . . . may provide to any Government authority access to or copies of, or the information contained in, the financial records of any customer except in accordance with the provisions of this chapter.").

Here, the Contractors' claim that United should have informed them of the troubled status of the construction loan is tantamount to a request that United breach its implied contract of privacy with its customer. The Contractors do not, and cannot, assert that United had a public duty to disclose that information. Thus, had United volunteered that information as the Contractors would have it, United would have violated Tyme's right to financial privacy. United may have also subjected itself to a lender liability claim if it had stepped outside its role as the lender and into its customer's contractual relationships, potentially interfering with Tyme's contracts. *See, e.g., First Commercial Bank, N.A. v. Walker,* 333 Ark. 100, 969

S.W.2d 146, 150 (1998) (describing bank customers' claim that the bank tortiously interfered with the customers' contractual relations as a lender liability action), *cert. denied,* 525 U.S. 965, 119 S.Ct. 410, 142 L.Ed.2d 332 (1998). As such, the Contractors' contention that United impliedly requested their services by not disclosing that the construction loan was nonperforming must fail as a matter of law.

The Contractors also contend "that an implied request will be established unless the evidence clearly reveals that the services were provided gratuitously." Appellants' Br. at 8. In support of that assertion, the Contractors rely on two cases, the first of which is *Biggerstaff v. Vanderburgh Humane Society, Inc.,* 453 N.E.2d 363 (Ind.Ct.App.1983). In that case, Biggerstaff's dogs were seized by the State pursuant to a search warrant and placed with the Humane Society. Biggerstaff obtained a court order "prohibiting the Humane Society from following its usual practice of placing unwanted animals in adoptive homes or euthanizing them" during the pendency of his appeal. *Id.* at 363–64. After this court affirmed his criminal conviction, the Humane Society sought and received restitution under a theory of unjust enrichment. This court affirmed that award, stating:

To recover under the theory of implied contract or quantum meruit, the plaintiff is usually required to establish that the defendant impliedly or expressly requested the benefits conferred. Additionally, relief will be denied if the plaintiff did not contemplate a fee in consideration of the benefit or if the defendant could not reasonably believe the plaintiff expected a fee. Stated more simply, these two rules preclude recovery where the benefit is officiously or gratuitously conferred.

*Id.* at 364. The court then concluded that Biggerstaff requested the Humane Soci-

ety's services by seeking the court order and that the Humane Society's services were not gratuitous.

The second case discussed by the Contractors is *Bright v. Kuehl,* 650 N.E.2d 311 (Ind.Ct.App.1995). There, a man brought an action against a woman he had cohabited with and with whom he had commingled funds in a jointly accessed checking account. The man sought restitution for some funds withdrawn by the woman, and the trial court granted his requested relief on the theory of unjust enrichment. On appeal, this court held that the trial court's judgment was clearly erroneous. In so holding, we reasoned as follows:

> Our review of the record reveals that Bright [the woman] and Kuehl [the man] commingled their funds upon deposit into Kuehl's checking account. The record indicates that Bright regularly used Kuehl's checking account for various payments of expenses. The record does not indicate that Kuehl attempted to prevent Bright's actions until the relationship soured. The record does not support the notion that Kuehl provided these monies to Bright with the expectation that she would return the amount of money she spent on expenses during the course of their cohabitation or that Bright impliedly or expressly requested these benefits.
>
> As such, we determine ... that these particular circumstances do not establish that Kuehl is entitled to relief based upon a theory of implied contract....

650 N.E.2d at 315.

It is not disputed that the Contractors did not perform their work gratuitously and that their work enhanced the value of United's collateral.[9] However, the Contractors' argument on this issue is that their showing of nongratuitous work is equivalent to an implied request by United that the work be performed. Neither *Biggerstaff* nor *Bright* stands for the proposition that nongratuitous work is equivalent to a request for services. To the contrary, the case law is clear that the burden is on the Contractors "to establish that the defendant impliedly or expressly requested the benefits conferred. Additionally, relief will be denied if the plaintiff did not contemplate a fee in consideration of the benefit...." *Biggerstaff,* 453 N.E.2d at 364. That is, the Contractors must show both a request for services and nongratuitous work. The Contractors' argument on this issue conflates those two distinct burdens. Accordingly, the Contractors' argument fails as a matter of law.

In sum, we hold that the designated evidence shows that United was entitled to judgment as a matter of law. To maintain an action for unjust enrichment, the Contractors were required to demonstrate that United made an express or implied request for their services. They have not done so. United also had a duty to maintain the financial privacy of its customer and not to interfere with its contractual relationships. United therefore did not have a duty to disclose that the loan proceeds had been exhausted or the default status of the construction loan to the Contractors. Neither does the Contractors' showing of nongratuitous work satisfy the condition precedent that United have re-

---

**9.** In its brief, United disputes the Contractors' assertion that it was enriched. As United notes, "[the] [C]ontractors overlook the nonperforming loan and unsatisfied judgment for millions of dollars. United Bank is damaged as a result of this transaction, not enriched." Appellee's Br. at 10. The fact that work performed by the Contractors benefited United does not necessarily mean, on these facts, that United was unjustly enriched. But, given our disposition of this case, we need not reach the unjust enrichment issue.

quested the work. Accordingly, the trial court properly entered summary judgment for United.

Affirmed.

BAKER, C.J., and MATHIAS, J., concur.